# WIGHT *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF PENNSYLVANIA.

No. 494.  Argued November 5, 6, 1896. — Decided May 24, 1897.

Hauling goods on the Pittsburgh, Cincinnati and St. Louis Railroad from Cincinnati to Pittsburgh and delivering them to a consignee in his warehouse from a siding connection, and hauling similar goods for him from and to the same cities on the Baltimore and Ohio Railroad, and delivering them to him from the station of that road in Pittsburgh, there being no siding connection, is transportation " under substantially similar circumstances and conditions," within the meaning of section 2 of the interstate commerce act of February 4, 1887, c. 104; and a rebate allowed him by the Baltimore and Ohio road to compensate for cartage to his warehouse is a discrimination against other shippers over that road to whom no rebate is allowed.

Whether the same words as used in section 4 of that act have a broader meaning or a wider reach than they do as used in section 2, is not determined.

SECTION 2 of the interstate commerce act reads:

"That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful." Act of February 4, 1887, c. 104, 24 Stat. 379.

Section 10 of the act as amended by the act of March 2, 1889, c. 382, 25 Stat. 855, makes the violation of any of the provisions of the act a misdemeanor and subject to punishment. On October 8, 1894, an indictment was found in the District Court of the United States for the Western District of Pennsylvania, charging the defendant with a violation of said section 2. The trial resulted in a verdict and judgment against him, to reverse which this writ of error was sued out.

In their brief his counsel make this statement of facts:

"The undisputed facts proved in evidence are as follows: F. H. Bruening was engaged, during the year 1892, in the business of a wholesale dealer in beer in the city of Pittsburgh; he purchased his beer in Cincinnati in carload lots, from the Moerlein Brewing Company of that city; Bruening's place of business was situated on the track of the Pittsburgh, Cincinnati and St. Louis Railroad Company, known as the 'Pan-handle,' and had a siding connection with that road, so that Mr. Bruening could ship his beer from Cincinnati over the Pan-handle Railroad, and have it delivered and unloaded directly into his warehouse. The rate by the Pan-handle Railroad for this service from Cincinnati to the warehouse was fifteen cents per hundred pounds. The station of the Baltimore and Ohio Railroad Company in Pittsburgh was

at some distance from Bruening's warehouse, and there was no track connection between the Baltimore and Ohio Railroad and the warehouse, so that if Bruening shipped his beer from Cincinnati by the Baltimore and Ohio route it was necessary to haul it in wagons from the Baltimore and Ohio station to the warehouse. The rate charged by the Baltimore and Ohio route between Cincinnati and Pittsburgh, on beer in carloads, was likewise fifteen cents per hundred pounds.

"In the month of June, 1892, agents of the Baltimore and Ohio Railroad Company, subordinate to the plaintiff in error, made an arrangement with Mr. Bruening, by which it was agreed that, if Bruening would ship his beer via the Baltimore and Ohio route from Cincinnati to Pittsburgh, the railroad company would make the same delivery at the door of his warehouse that was made by the Pan-handle Railroad; that is to say, the railroad company would haul the beer from its station to Bruening's warehouse without extra charge. When, afterward, it was found that the cost to the railroad company for this hauling would be three and one half cents per hundred pounds, Bruening offered to do the hauling himself for that price, and his offer was accepted. This arrangement was reported to the plaintiff in error by his subordinates, approved by him, and continued in effect during the months of June, July, August and September, 1892. During these months. Bruening made large shipments of beer in carloads via the Baltimore and Ohio route, paid the charge of fifteen cents per hundred pounds on delivery, hauled the beer from the station to his warehouse, and at the end of each month presented and collected a bill for three and one half cents per hundred pounds for the hauling. At the trial there was no question made of the good faith of the arrangement with Bruening; it was not questioned that the three and one half cents was the fair cost of the hauling; that the sole object of the arrangement was to make the same delivery which was made by the Pan-handle Railroad, and at the same charge of fifteen cents per hundred pounds.

"During the continuance of this arrangement with Bruening,

as shown in the evidence, the Kaufman Brewing Company of Cincinnati made several shipments of beer in carloads by the Baltimore and Ohio route, on bills of lading in the form shown at pages 73, 74 and 75 of the record. Each of these shipments was consigned to the 'Kaufman Brewing Company, care of or notify Henry Wolf, Pittsburgh, Pa., to order of shipper,' and was taken at the fifth class rate of fifteen cents per hundred pounds, as shown on the face of the bill. Henry Wolf was a wholesale dealer in beer in Pittsburgh, whose warehouse was near the station of the Baltimore and Ohio Railroad Company, but was not connected by track with any railroad. The bills of lading for the Kaufman Brewing Company's shipments were transmitted through bank with draft attached, and Mr. Wolf testified that, after he received notice from the railroad company of the arrival of each shipment, he went to the bank and paid the draft, received the bill of lading, and, on presenting it and paying fifteen cents per hundred pounds, received the beer, which he hauled to his warehouse at his own expense."

*Mr. Hugh L. Bond* for plaintiff in error. *Mr. John K. Cowen* was on his brief.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

Accepting the statement of facts made by the defendant as correct (and there is nothing in the statement which makes to his prejudice, or omitted from that statement which would be to his advantage), we are of opinion that the verdict and judgment were right, and must be sustained. It is unnecessary to consider all the instructions given and those refused, or determine whether in those given there may or may not be some language open to criticism. In its general charge the court narrowed the case to the facts which, as stated by

counsel, are undisputed, and correctly stated the law applicable to those facts. Indeed, while the question of guilt or innocence was submitted to the jury and passed upon by them, it is one rather of law than of fact, and if the court properly stated the law applicable to the facts, then the verdict was right and ought to be sustained. With reference to all other matters it is enough to say that our attention is called to no errors in the admission of testimony, and we see nothing in the instructions asked and given or asked and refused which could injuriously affect the rights of the defendant or limit the specific interpretation by the court of the rules of law applicable to those facts.

It will be observed that, in order to induce Mr. Bruening to transfer his transportation from a competing road to its own line, the Baltimore and Ohio Railroad Company, through the defendant, in the first place, made an arrangement by which for fifteen cents per hundredweight it would bring the beer from Cincinnati and deliver it at his warehouse; that afterwards this arrangement was changed, and it delivered the beer to Mr. Bruening at its depot, and allowed him three and one half cents per hundred for carting it to his warehouse. As Mr. Bruening had the benefit of a siding connection with the competing road, and could get the beer delivered over that road at his warehouse for fifteen cents, it apparently could not induce him to transfer his business from the other road to its own without extending to him this rebate. During all this time it was carrying beer for Mr. Wolf from the same place of shipment (Cincinnati) to the same depot in Pittsburgh, and charging him fifteen cents therefor. Mr. Wolf had no siding connection with the rival road, and, therefore, had to pay for his cartage by whichever road it was carried. His warehouse was in a direct line 140 yards from the depot, while Mr. Bruening's was 172 yards, though the latter generally carted the beer by a longer route, on account of the steepness of the ascent. Now, it is contended by the defendant that it was necessary for the Baltimore and Ohio Company to offer this inducement to Mr. Bruening in order to get his business, and not necessary to make the like offer to

Mr. Wolf, because he would have to go to the expense of carting by whichever road he transported; that, therefore, the traffic was not "under substantially similar circumstances and conditions" within the terms of section 2. We are unable to concur in this view. Whatever the Baltimore and Ohio Company might lawfully do to draw business from a competing line, whatever inducements it might offer to the customers of that competing line to induce them to change their carrier, is not a question involved in this case. The wrong prohibited by the section is a discrimination between shippers. It was designed to compel every carrier to give equal rights to all shippers over its own road and to forbid it by any device to enforce higher charges against one than another. Counsel insist that the purpose of the section was not to prohibit a carrier from rendering more service to one shipper than to another for the same charge, but only that for the same service the charge should be equal, and that the effect of this arrangement was simply the rendering to Mr. Bruening of a little greater service for the fifteen cents than it did to Mr. Wolf. They say that the section contains no prohibition of extra service or extra privileges to one shipper over that rendered to another. They ask whether if one shipper has a siding connection with the road of a carrier it cannot run the cars containing such shipper's freight on to that siding and thus to his warehouse at the same rate that it runs cars to its own depot, and there delivers goods to other shippers who are not so fortunate in the matter of sidings. But the service performed in transporting from Cincinnati to the depot at Pittsburgh was precisely alike for each. The one shipper paid fifteen cents a hundred; the other, in fact, but eleven and a half cents. It is true he formally paid fifteen cents, but he received a rebate of three and a half cents, and regard must always be had to the substance and not to the form. Indeed, the section itself forbids the carrier "directly or indirectly by any special rate, rebate, drawback or other device" to charge, demand, collect or receive from any person or persons a greater or less compensation, etc. And section 6 of the act, as amended in 1889, throws light upon the intent of the

statute, for it requires the common carrier in publishing schedules to "state separately the terminal charges, and any rules or regulations which in any wise change, affect or determine any part or the aggregate of such aforesaid rates and fares and charges." It was the purpose of the section to enforce equality between shippers, and it prohibits any rebate or other device by which two shippers, shipping over the same line, the same distance, under the same circumstances of carriage, are compelled to pay different prices therefor.

It may be that the phrase " under substantially similar circumstances and conditions," found in section 4 of the act, and where the matter of the long and short haul is considered, may have a broader meaning or a wider reach than the same phrase found in section 2. It will be time enough to determine that question when it is presented. For this case it is enough to hold that that phrase, as found in section 2, refers to the matter of carriage, and does not include competition.

We see no error in the record, and the judgment of the District Court is

*Affirmed.*

MR. JUSTICE WHITE concurs in the judgment.