## SEABOARD AIR LINE RY. CO. et al. v. UNITED STATES.

(District Court, E. D. Virginia. January 19, 1918.)

1. CARRIERS �köm32(2)—TRANSPORTATION CHARGES—DISCRIMINATION.
    At a point south of Richmond three railroad companies were competitors for traffic to and from that city. Each road had switching facilities at Richmond, connecting with each other, and each delivered traffic from competitive points to industries on its own tracks in Richmond at its tariff rate to that point, without extra charge for switching; also each road absorbed the switching charge of a competitor on freight to be hauled by it to industries on the competitors' tracks at Richmond. Other railroad companies, not competitors of those for the Southern business, entered Richmond and had switching facilities connecting with those of the competing roads. Such roads, however, did not absorb the switching charges on freight to be delivered to industries on the. lines of the roads with which they were not in competition. Interstate Commerce Act Feb. 4, 1887, c. 104, § 2, 24 Stat. 379 (Comp. St. 1916, § 8564), declares that, if any common carrier subject to the provisions of the act shall directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered or to be rendered than it charges, demands, or receives from any other person, it shall be guilty of unjust discrimination. *Held*, that the industries located at Richmond on the several railroads should be considered a group of industries, and it was unjust and discriminatory for the competing railroad companies to make deliveries on their tracks without switching charges in case of competitive business, and to absorb same as to industries located on the competing lines, but to decline to furnish the same service with respect to industries located on noncompeting lines.

2. CARRIERS ⊫köm32(2)—DISCRIMINATION—DEFENSE.
    In such case the competing carriers cannot escape the charge of discrimination because the delivery of the competitive shipments was wholly by rail connections.

3. CARRIERS ⊫köm32(1)—INTERSTATE COMMERCE COMMISSION—AUTHORITY.
    The Interstate Commerce Act does not define the particular acts which constitute unlawful discrimination, and that question is left to the Interstate Commerce Commission.

4. COMMERCE ⊫köm95—INTERSTATE COMMERCE—AUTHORITY.
    Findings of fact by the Interstate Commerce Commission in connection with unlawful discrimination are conclusive.
    Woods, Circuit Judge, dissenting.

In Equity. Petition by the Seaboard Air Line Railway Company and others against the United States, to enjoin an order of the Interstate Commerce Commission. Denied and dismissed.

R. Walton Moore, Merrel P. Callaway, and Frank W. Gwathmey, all of Washington, D. C., for petitioners.

Joseph W. Folk, Chas. W. Needham, and Blackburn Esterline, Special Asst. Atty. Gen., all of Washington, D. C., and Richard H. Mann, U. S. Atty., of Petersburg, Va., for the United States.

William A. Glasgow, Jr., of Philadelphia, Pa., for Richmond Chamber of Commerce.

Before PRITCHARD and WOODS, Circuit Judges, and WADDILL, District Judge.

⊫köm For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PRITCHARD, Circuit Judge. At certain points south of Richmond the Seaboard Air Line Railway Company, the Southern Railway Company, and the Atlantic Coast Line Railroad Company are competitors for traffic to and from that city. Each of these roads has switching facilities at Richmond connecting with the other. Each of them delivers traffic from competitive points to industries on its own tracks in Richmond at its tariff rate to Richmond, without extra charge for switching. Each of them charge, however, for carload freight received from a competitor from a competing point to be delivered to an industry on its own rails. To equalize the advantage which each has over the other as to industries on its own tracks, each of these roads absorbs the switching charge of its competitor on freight to be hauled by it to industries on its competitors' tracks.

Stating the matter more concretely, and taking Oxford, N. C., as a competitive point, the Seaboard Air Line delivers freight from that city to industries on its own rails without extra charge beyond its tariff to Richmond. For freight consigned over the Seaboard for industries located on the rails of the Southern or Coast Line, the Seaboard absorbs the switching charge of the Southern or Coast Line, so that the cost to the shipper is the same as if he had shipped over the Southern or Coast Line to the industry on that line. The same rules are applied to shipments from industries located on the several switches to competitive points.

The Chesapeake & Ohio Railroad Company and the Richmond, Fredericksburg & Potomac Railroad Company have switching facilities connecting with the other roads above named, but they are not competitors for the Southern business to and from Richmond. Basing the difference entirely on this absence of competition, the Seaboard, Southern, and Coast Line do not absorb the switching charges on any freight to be delivered to industries on the switches of the Chesapeake & Ohio and the Richmond, Fredericksburg & Potomac.

[1] Under a complaint of the Richmond Chamber of Commerce the Interstate Commerce Commission decided, three of the commissioners dissenting, that this method of business of the Seaboard, Southern, and Atlantic Coast Line was an unlawful discrimination against the industries on the Chesapeake & Ohio and the Richmond, Fredericksburg, & Potomac, under section 2 of the Interstate Commerce Act. The finding of the Commission is now before this court for review, under a petition filed by the Seaboard Air Line Railway Company, the Atlantic Coast Line Railroad Company, and the Southern Railway Company.

In addition to what we have said, the Commission, in pursuance of the principles underlying Wight v. United States, 167 U. S. 512, 17 Sup. Ct. 822, 42 L. Ed. 258, and I. C. C. v. Alabama Midland Ry. Co., 168 U. S. 144, 18 Sup. Ct. 45, 42 L. Ed. 414, found:

"That the practice of the Southern lines of absorbing switching charges only when the switching line actually competes with the line haul carrier on traffic to or from industries at Richmond under substantially similar circumstances and conditions as defined in section 2 is unlawful."

249 F.—24

Section 2 of what is known as the Act to Regulate Commerce (24 Stat. 379) is in the following language:

"That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful."

The first question arising in this case is as to whether the industries situated on the following railroads: Richmond, Fredericksburg & Potomac, Seaboard Air Line, Atlantic Coast Line, Chesapeake & Ohio, and Southern—are to be treated as a unit; that is, a group of industries engaged in doing business at Richmond? If they are, then we think the solution of this problem becomes comparatively easy. All the shipments in question are billed to and received at Richmond, and are therefore similarly situated. It was obviously the intention of Congress, in the enactment of section 2, above quoted, to secure precisely the same kind of treatment for all industries that are similarly situated. We think that the cases of Wight v. United States, supra, and I. C. C. v. Alabama Midland Railroad Co., supra, are decisive of the points involved in this question. The Commission in reaching the conclusion that the defendant carriers were liable under section 2, and in discussing this phase of the question, among other things, said:

"If absorption practices are to be uniform, as defendants contend they should be, and if they are to be based upon a definite principle, there is no reason why that principle should not be uniformly applied. At Richmond a certain theory is employed because the Southern lines have agreed to employ it; at other cities an entirely different theory exists, not because of any difference in the matter of carriage, but because such different theory best suits the carriers serving those points. In other words, the Southern lines would apply the restricted theory wherever they can, and would conform to a different practice at places whose policy they cannot seriously influence. At Richmond, most of the competition experienced by the Southern lines is with each other, little coming from either the Chesapeake & Ohio or the Richmond, Fredericksburg & Potomac. If, therefore, they intentionally or accidentally agree upon a uniform absorption practice, there is no other carrier competition to prevent its execution.

"If it be true that absorption must be governed entirely by competitive influences, it may well be argued that only that competition which is compelling should be recognized. All of these defendants contend that absorption is compelled when there is competition with the switching lines, but the Southern carriers insist that this is the only competition which is compelling. If the shipment originate at a point common to all of the Southern lines, destined to an industry in Richmond on the tracks of the Chesapeake & Ohio, the traffic is certainly competitive to Richmond, but, because the Chesapeake & Ohio is not a competitor, the switching charge of that line is not absorbed. In other words, such traffic ceases to be competitive upon its arrival at Richmond. If the same car were destined to an industry on the rails of the Seaboard Air Line, the switching charge of that carrier would be absorbed by the Atlantic Coast Line or the Southern Railway, and such industry would have

SEABOARD AIR LINE RY. CO. V. UNITED STATES

an advantage over the Chesapeake & Ohio industry to the extent of the absorption. In the one case the shipper or consignee would pay only the Richmond rate; in the other, he would pay the Richmond rate plus the switching charge. The only justification offered for this advantage is that the Seaboard Air Line, Atlantic Coast Line, and Southern are rival roads, and that the transportation is therefore not performed under circumstances and conditions substantially similar to those attendant upon the transportation to the Chesapeake & Ohio industry. But the Supreme Court has said that 'the phrase under substantially similar circumstances and conditions, as used in the second section, refers to the matter of carriage and does not include competition between rival roads.' Wight v. U. S., 167 U. S. 512, 17 Sup. Ct. 822, 42 L. Ed. 258; I. C. C. v. Alabama Midland Ry. Co., 168 U. S. 144, 18 Sup. Ct. 45, 42 L. Ed. 414. In cases where the traffic moves from the same points of origin, and the switching charge is absorbed in the one case and not in the other, there is a violation of section 2, as the existence of competition in the one case and not in the other clearly does not constitute a substantial dissimilarity of circumstances and conditions. Even, however, in the case of traffic which moves from different points of origin, and where it may be that section 3 alone applies we do not think the competitive conditions relied upon are sufficient to constitute a substantial dissimilarity of circumstances and conditions within the meaning of that section. Traffic Bureau of Nashville v. L. & N. R. R. Co., 28 Interst. Com. Com'n R. 533. * * *

"We have found that the refusal of the defendants to absorb switching charges on some carload shipments at Richmond, while absorbing such charges on other carload shipments to and from that point, is unjust discrimination against the shippers who are required to pay such charges. * * * The defendants will be required to cease and desist from such discrimination in the future."

[2] It is strenuously insisted that in the case of Wight v. United States, supra, the transfers in question were made by drayage, and that, therefore, that case is easily distinguished from the case at bar. While it is true that the transfer in the Wight Case was not made by rail connection, nevertheless the result of what was done in that case, as respects discrimination, is precisely the same as in this case. The evil sought to be cured by the statute was discrimination in favor of one party as against another similarly situated, and we fail to understand upon what theory it may be said that the absorption or transfer charges which relieve the shipper from the payment of switching charges could be held to be different from a case where a railroad paid the drayage charges for one shipper and refused to pay the same for another.

Commissioner Harlan in his concurring opinion, referring to the Wight Case, among other things, said:

"As I have understood it, the court there lays down the broad general doctrine that, as between two shippers at the same rate point, competition between carriers does not excuse or justify a discrimination of the character condemned as unlawful under section 2 of the act. And a careful reading of the case seems not to permit of the suggestion that the court would have reached just the opposite conclusion if, instead of a horse and cart, the Baltimore & Ohio had hired a switching line to deliver the traffic to the industry on the rails of its competitor, and had thus accomplished, merely by the use of different facilities, precisely the same discrimination which, in the case under discussion, was declared to be unlawful."

The one was as much a discrimination as the other. Therefore we think that the Commission was correct in holding that the Wight Case

is determinative of the questions involved in those proceedings. To hold otherwise would simply result in the annulment of the plain provisions of the statute. It cannot be reasonably insisted that industries located on lines belonging to carriers other than the defendants, but receiving shipments at Richmond, do not constitute a part of the industries doing business at that place.

[3, 4] We are of opinion that the act in question confers upon the Interstate Commerce Commission the power of determining as to whether the services rendered are "like and contemporaneous"; also as to whether the respective traffic was "of a like kind." Further, as to whether the transportation was made under "substantially similar circumstances and conditions" (Texas & P. R. Co. v. I. C. C., 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940), while the act does not undertake to define the particular acts which constitute unlawful discrimination, it undoubtedly commits that to the Commission and its findings are conclusive. I. C. C. v. Ill. Cent. R. Co., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280; I. C. C. v. D. L. & W., 220 U. S. 235, 31 Sup. Ct. 392, 55 L. Ed. 448; Pa. R. Co. v. International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; United States v. L. & N. R. Co., 235 U. S. 314, 35 Sup. Ct. 113, 59 L. Ed. 245.

The findings of fact by the Commission are conclusive, and we concur with them in their conclusions of law. Therefore we are of opinion that the petitioners are not entitled to the relief for which they pray, and this being a case where only injunctive relief is sought the petition will be denied and the bill dismissed.

WOODS, Circuit Judge (dissenting). The facts are sufficiently stated in the majority opinion. The decision depends upon the application of the following sections of the Interstate Commerce Act:

"Sec. 2. That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful.

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

"Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines, and the receiving, forwarding, and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be

construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business."

The controversy comes to this: If transportation to Richmond is to be regarded unitary, and the delivery to different industries on tracks of the different roads merely incidental to delivery in Richmond, and not a separate item of carriage, then all switching charges must be put on the same basis, under section 2. On the other hand, if the law contemplates that carriage to the depot of each railroad in Richmond, or to an industry on its own switch, is to be regarded as transportation to one destination, and transportation from the depot of each railroad to an industry on the switch of another railroad is to be regarded a separate act of transportation of another road to its ultimate destination, then the switching charges to industries on the different railroads may be charged differently under section 3 (Comp. St. 1916, § 8565) provided the difference is reasonable and founded on substantial difference in condition, and in determining whether there is a substantial difference in conditions the fact of competition may be taken into the estimate under that section.

Prior to its decision in this case, the Interstate Commerce Commission has always considered switching carriage as a separate service for which a separate tariff may be made. Leonard v. Chicago, etc., R. R. Co., 12 Interst. Com. Com'n R. 492; Curtis v. Southern Pacific R. R. Co., 23 Interst. Com. Com'n R. 372; Ohio, etc., Co. v. Chicago, etc., Co., 28 Interst. Com. Com'n R. 703. In the Curtis Case it is stated that this is the general practice of the railroads of the United States. The right of the carrier to treat the terminal charge as a different item of carriage and the different industries on the switch lines as different terminals is clearly recognized in Interstate Commerce Commission v. Stickney, 215 U. S. 98, 105, 30 Sup. Ct. 66, 67 (54 L. Ed. 112), in this language:

"By section 15 the Commission is authorized and required, upon a complaint, to inquire and determine what would be a just and reasonable rate or rates, charge or charges. This, of course, includes all charges, and the carrier is entitled to have a finding that any particular charge is unreasonable and unjust before it is required to change such charge. For services that it may render or procure to be rendered off its own line, or outside the mere matter of transportation over its line, it may charge and receive compensation. Southern Railway Co. v. St. Louis Hay & Grain Co., 214 U. S. 297 [29 Sup. Ct. 678, 53 L. Ed. 1004]."

Accordingly the United States Supreme Court has always considered the lawfulness and reasonableness of switching charges under section 3, and not under section 2. Pennsylvania Railroad Co. v. United States, 236 U. S. 351, 35 Sup. Ct. 370, 59 L. Ed. 616; Louisville & N. R. R. Co. v. United States, 238 U. S. 1, 35 Sup. Ct. 696, 59 L. Ed. 1177; Louisville & N. R. R. Co. v. United States, 242 U. S. 60, 37 Sup. Ct. 61, 61 L. Ed. 152.

Competition is a fact which both the carrier and the shipper have a right to have estimated in the decision whether terminal charges and differences in them are reasonable. Whether competition is a fact of

such practical importance in every instance as to justify terminal charges based on that alone is, of course, a question for the Interstate Commerce Commission. Interstate Commerce Commission v. Alabama, etc., R. R. Co., 168 U. S. 144, 166, 18 Sup. Ct. 45, 42 L. Ed. 414; Louisville & N. R. R. Co. v. United States, 238 U. S. 1, 35 Sup. Ct. 696, 59 L. Ed. 1177.

The view of the majority of the Commission is that to make a distinction in switching charges at Richmond or any other city based on competition between rival lines is to violate section 2 of the act. But that section was intended to enforce equality to shippers over the same line, and to prohibit any rebate or other device by which two shippers shipping over the same line, the same distance, and under the same conditions of carriage are compelled to pay different prices therefor. Interstate Commerce Commission v. Alabama, etc., Co., supra. Hence the conclusion of the majority of the Commission must necessarily rest on the proposition that a shipment over any road into Richmond has reached its railroad destination as soon as it reaches the railroad's terminal in Richmond, and that transportation by another road over its rails to the consignee is not a separate transportation on another line, but a mere incident of delivery, and that therefore all industries on any of the other roads must be put on a basis of equality without respect to competition. This conclusion was reached on the theory that the decision in the case of Wight v. United States, 167 U. S. 512, 17 Sup. Ct. 822, 42 L. Ed. 258, is inconsistent with the practice of the Interstate Commerce Commission, sanctioning the customs of railroads in making switching service a separate tariff item. I think it clear that this case has no such bearing.

The Wight Case relates entirely to an advantage given to one shipper, Bruening, over another, by a rebate of 3½ cents per 100 pounds, the cost of drayage from the railroad depot to his storehouse, in order to equalize his rate and to get his business from a competing road on which the industry was situated; whereas, Wolf, his competitor, whose storehouse was not situated on the competing road, had to pay his own drayage. In such case the court necessarily held that such a practice was not only in fact giving a rebate, in violation of section 2, but would open the door to the abuses which section 2 was obviously intended to prevent. The drayage there paid for by the railroad was not a part of railroad transportation. Switching by another road, after delivery to it, is a different act of railroad transportation on a separate line. In that case it was held that the railroad company could not, on the ground of competition, pay for a service entirely out of its line of business; but this decision gives no countenance to the idea that competition may not be taken into the account in fixing the tariff for railroad switching service.

Since transportation on a railroad switch to industries in a city located on other roads is carriage to a different destination, separate from the line haulage, and subject to a different tariff, it follows, under the decision above cited, that competition may be taken into consideration in fixing the charges, and that the petition should be granted.

The decision in which the majority of the Interstate Commerce Commission concurred was made on the ground that as a matter of law competition could not be taken into account in fixing switching charges in the circumstances stated. In this I think that there was error of law. Of course, I intimate no opinion as to whether competition in this particular instance furnished a reasonable basis for absorbing the charges for delivery on the switches of competing roads and not absorbing them on the switches on noncompeting roads. That is a question for the Commission, which this court has no power to anticipate.

I think the injunction should be granted.