KOPPERS COMPANY, INC., Plaintiff,

v.

UNITED STATES of America,
Defendant,

and

Property Owners' Committee, The Interstate Commerce Commission, The Chesapeake and Ohio Railway Company, Norfolk and Western Railway Company, and the Virginia Railway Company, Intervening Defendants.

Civ. 16395.

United States District Court
W. D. Pennsylvania.

Sept. 24, 1958.

John M. Crimmins, and Richard E. Spatz, Pittsburgh, Pa., for plaintiff.

John H. D. Wigger, U. S. Dept. of Justice, Washington, D. C., Hubert I. Teitelbaum, U. S. Atty., Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

I. K. Hay, Assoc. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Hewitt Biaett, and Robert H. Pratt, Richmond, Va., R. B. Claytor, and J. S. Shannon, Roanoke, Va., Martin A. Meyer, Jr., Washington, D. C., for intervening defendant, Chesapeake & Ohio Ry. Co., and others.

Rose, Rose & Houston, Pittsburgh, Pa., Homer S. Carpenter, Washington, D. C.,

for intervening defendant, Property Owners' Committee.

Before STALEY, Circuit Judge, GOURLEY, Chief Judge, and SORG, District Judge.

GOURLEY, Chief Judge.

The statutory court has for determination the legality of varying proportional railroad rates which poses the question —Do proportional railroad rates violate the provisions of Sections 2 and 3(1) of the Interstate Commerce Act where the rail rates for transporting like commodities between identical points vary depending upon the ultimate destinations? [1]

The Interstate Commerce Commission answered in the negative and after full and complete hearing sustained the rates. The statutory court agrees.

The proceeding is filed under Sections 1336, 1398, 2321, 2322 and 2323 of the United States Code, Title 28, which provides, inter alia, for suits to enjoin, set aside, annul, and suspend orders of the Interstate Commerce Commission. It came on to be heard before a specially constituted court, pursuant to provisions of Title 28 U.S.C.A. Sections 2284 and 2321–2325.

The complainant asks for the setting aside and enjoining the enforcement of an order of the Commission, entered March 20, 1958, in which the Commission dismissed the complaint in a proceeding before it, Docket No. 31264, Koppers Company, Inc., The Chesapeake & Ohio Railway Co., et al., 301 I.C.C. 284.

No material issues of fact have been raised by the pleadings, and the original parties and all intervening defendants have filed Motions for Summary Judgment.

We find that the statutory court has jurisdiction of the subject matter of this suit, that the amount in controversy exceeds the sum of $3,000 exclusive of interest and costs, and that venue is properly laid because the plaintiff, Koppers Company, Inc., has its principal offices within this district. 28 U.S.C.A. Section 1398.

Motions for Summary Judgment presented by the complainant, respondent and intervening defendants have been heard through extended arguments, and briefs have been submitted by counsel for all the parties.

Whenever a charge is made before the Commission that varying proportional rates constitute an "unjust discrimination" or "undue or unreasonable prejudice or disadvantage" within the respective meanings of Sections 2 and 3(1), the burden is on the complainant to es-

---

[1]. Sections 2 and 3(1) of the Interstate Commerce Act (49 U.S.C.A. Sections 2 and 3(1) provide:

"§ 2. [That] if any common carrier subject to the provisions of this chapter shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this chapter, than it charges, demands, collécts, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful."

"§ 3(1). It shall be unlawful for any common carrier subject to the provisions of this chapter to make, give, or cause any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic, in any respect whatsoever; or to subject any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever: Provided, however, That this paragraph shall not be construed to apply to discrimination, prejudice, or disadvantage to the traffic of any other carrier of whatever description."

tablish, if he is alleging a violation of Section 2, that the railroad is charging him a greater compensation for doing (1) a like and contemporaneous service in the transportation of (2) a like kind of traffic (3) under substantially similar circumstances and conditions. Similarly, if a violation of Section 3(1) is charged, the burden is on the complainant to establish also that the railroad is subjecting him to an undue or unreasonable prejudice or disadvantage.

The facts are not in substantial dispute and may be summarized as follows:

Koppers owns and operates a merchant coke plant at Kearny, New Jersey, hereinafter referred to as the New York Seaboard. One of its competitors, the Connecticut Coke Company, owns and operates a merchant coke plant at New Haven, Connecticut hereinafter referred to as the New England Seaboard. Coal is the basic raw material which is converted into coke and other products at these plants. Both of these companies acquire their coal from the same southern mines and transport said coal over the same southern railroads to Hampton Roads. This rail transportation is regulated by the Interstate Commerce Commission under 49 U.S.C.A. Sec. 1(1)(a). The coal is then trans-shipped by water carriers from Hampton Roads to the New York and New England Seaboards. The water transportation is not subject to regulation by the Interstate Commerce Commission. 49 U.S.C.A. Sect. 903(b). The service which the southern railroads perform with regard to this coal is identical between southern mines and Hampton Roads.

The coal is billed from the mines to Hampton Roads to Eastern Gas and Fuel Associates. Eastern Gas and Fuel Associates not only pay the coal producers for the coal, but also the railroad charges. Contractual understandings exist between Koppers, its competitors and Eastern whereby Eastern sells the coal on both the New York and New England Seaboards. Eastern directs the railroads to dump the coal into colliers owned by a subsidiary of Eastern and uses the same ocean-going facilities whether the destination of the coal is the New York Seaboard or New England Seaboard. Although Koppers and its competitors do not pay the railroad charges or the cost of the coal, or the payment of the water transportation charges directly to those performing the services or producing the commodity, each of the consignees on either the New York or New England Seaboard absorb said charges and costs paid or furnished by Eastern or its subsidiary to the competitors.

Prior to May 2, 1952, the rates charged the plaintiff and its New Haven competitor for the southern mines-Hampton Roads transportation of the coal was the same. Since May 2, 1952, with the permission of the Commission, the railroads have been charging Koppers twenty cents per ton more for the southern-mines-Hampton Roads transportation of coal destined for the New York Seaboard than they have been charging the Connecticut Coke Company as to coal destined for the New England Seaboard.

The plaintiff contends the rates permitted by the Commission are illegal and discriminatory on two separate and distinct legal theories:

1. They are illegal under Section 2 because they impose a higher rate on complainant Koppers than they impose upon their competitors for the same rail service. That the commission in allowing this differential bottomed its decision upon impermissable grounds; the different ultimate destinations, and commercial and competitive circumstances affecting the movement of the traffic after it leaves the terminal at Hampton Roads.

2. The rate is illegal under Section 3(1) because it causes plaintiff an undue and unreasonable prejudice and disadvantage by the higher rate it charges above the rate of its competitors and, in particular, above the rate of the Connecticut Coke Company, which higher rate has lost complainant business and has caused it to suffer a loss of profits.

The defendants and intervenor defendants contend:

1. The Interstate Commerce Commission has long recognized the lawfulness of varying proportional rates and the essential role which such rates perform in the nation's rate structure.

2. The Supreme Court of the United States has consistently held that proportional rates which vary depending upon circumstances or origin, destination, competition and commerce are not unlawful.

3. Proportional rates which vary depending upon the origin or destination of traffic are integral parts of the rate structure at the present time.

4. Plaintiff's allegation that the varying proportional rates here in issue violate Section 3(1) of the Act is without foundation.

5. Varying proportional rates, such as those here involved, are a necessary instrument of the national transportation policy.

 Under either of these two sections issues of fact are presented for the determination of the Interstate Commerce Commission. If the Commission find that, in light of all the circumstances and conditions surrounding the transportation, there is no violation of these sections, and if its findings are supported by substantial evidence in the record as a whole and furnish a rational basis for its conclusion, then the Commission's determination is unassailable.

The proportional rates which provide a 20% per ton lower charge for the movement of southern coal ultimately destined to New England Seaboard than for that destined to New York Seaboard resulted from the authority of the Commission. Ex parte 175, Increased Freight Rates, 284 I.C.C. 589, dated April 11, 1952.

 The Sections of the Act involved contemplate that there shall be a tribunal capable of determining whether in given cases the services rendered are like and contemporaneous, whether the respective traffic is of a like kind, and whether the transportation is under substantially similar circumstances and conditions. Texas & Pacific R. Co. v. I. C. C., 162 U.S. 197, 213, 218, 219, 16 S.Ct. 666, 40 L.Ed. 940.

 The Interstate Commerce Act does not attempt to define an unlawful discrimination with mathematical precision. Instead, different treatment for similar transportation services is made an unlawful discrimination when undue, unjust, unfair, and unreasonable. The courts have always recognized that Congress intended to commit to the Commission the determination by application of an informed judgment to existing facts, of the existence of forbidden preferences, advantages and discrimination. United States v. Chicago Heights Trucking Co., 310 U.S. 344, 352, 353, 60 S.Ct. 931, 84 L.Ed. 1243.

 Under the provisions of the Act in question, which provides that charges must be reasonable, that discrimination must not be unjust, and that preference or advantage to any person, firm, corporation or locality must not be undue or unreasonable, it is necessarily implied that strict uniformity is not to be enforced; but that all circumstances and conditions which reasonable men would regard as affecting the welfare of the carrying companies, and of the producers, shippers and consumers, should be considered by the tribunal authorized and empowered to carry into effect and enforce the provisions of the Act. Texas & Pacific Ry. Co. v. I. C. C., supra.

 A violation of Sections 2 and 3(1) of the Interstate Commerce Act is not established by proof that the rail rate for transporting like commodities between identical points varies depending on the primary origins or ultimate destinations of the commodities since rate variations under such circumstances are not per se illegal, but, on the contrary, are characteristic of the rail rate structure. It is not necessarily unlawful to charge different rail rates, depending on the primary origins or ultimate destinations of the traffic, for performing the same physical transportation in moving like commodities between identical points. I. C. C. v. Inland Waterways Corp., 319 U.S. 671, 63 S.Ct. 1296, 87

L.Ed. 1655; John J. Serry v. Southern Pacific Co., 18 I.C.C. 554, 556 (1910); Erickson Co. v. C., M. & St. P. Ry. Co., 29 I.C.C. 414, 416 (1914); Scott-Mayer Commission Co. v. C.R.I. and P. Ry. Co., 28 I.C.C. 529 (1913); Export Rates on Grain and Grain Products, 31 I.C.C. 616, 619 (1914); State of Iowa v. B. & O. R.R. Co., 46 I.C.C. 595, 599 (1917).

On the contrary, the burden is on the complainant, Koppers, to prove that in light of all the circumstances attendant on the entire transportation involved in each instance—not simply the segment of the hauls for which the proportional rates are fixed—the rate variations constitute an unjust discrimination (Section 2) or undue prejudice (Section 3(1). State of Iowa v. B. & O. R. R. Co., supra.

■ Although the court is not bound by the construction placed on the Act by the Interstate Commerce Commission, where the construction is not doubtful, a definitely settled administrative construction is entitled to the highest respect; and, where acted on for a number of years, such construction will not be disturbed except for cogent reasons. United States v. Missouri Pacific R. Co., 278 U.S. 269, 280, 49 S.Ct. 133, 73 L.Ed. 322; United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; United States v. Alabama G. S. R. Co., 142 U.S. 615, 12 S.Ct. 306, 35 L.Ed. 1134.

Complainant contends that its legal question is supported by the following authorities: Interstate Commerce Commission v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102; James McWilliams Blue Line, Inc., v. United States, D.C., 100 F.Supp. 66, affirmed I. C. C. v. James McWilliams Blue Line, Inc., 342 U.S. 951, 72 S.Ct. 626, 96 L.Ed. 707; Wight v. United States, 167 U.S. 512, 17 S.Ct. 822, 42 L.Ed. 258; Interstate Commerce Commission v. Baltimore & Ohio R. Co., 225 U.S. 326, 32 S.Ct. 742, 56 L.Ed. 1107; Seaboard Air Line R. Co. v. United States, 254 U.S. 57, 59, 41 S.Ct. 24, 65 L.Ed. 129.

Each of the cases can be distinguished from the facts and circumstances to the case at bar.

In Re: Mechling; it was held that in the absence of greater costs to the railroad, the Commission could not permit or require railroads to charge higher proportional rates for the transportation of grain east of Chicago where it was transported to Chicago by barge, than where it came to Chicago by water or railroad shipments.

Blue Line held, where coal was transported by rail and then by water to the New England Seaboard, a higher proportional rate was not sustainable where the sole basis therefore was the fact that the coal was transported from the New England port to the interior by barge rather than by rail.

Wight held, where a railroad transports the same commodity for two shippers under the same circumstances, a rebate cannot be given one consignee for cartage from the railroad facility to the consignee's warehouse unless a similar rebate is given to all similar consignees. (In this decision the Supreme Court did not discuss or refer to their prior ruling in Texas & Pacific Railway Co., supra. It can be reasonably concluded that it was not intended to limit the prior holding that a difference in primary origins or ultimate destinations of shipments was a different circumstance justifying a difference in rates.)

Baltimore & Ohio held, it was discriminatory for a railroad to charge a lower rate to railroads for the hauling of coal which was to be used by them as fuel than what was charged for a similar haul for other users of coal.

Seaboard did not involve the validity of proportional rates depending upon the ultimate destination of the traffic. It held unlawful a railroad absorbing switching operations for shippers when using competitive lines but not when shippers used the railroad's own lines.

■ A study of the authorities which have reviewed proportional railroad

rates leads to the conclusion that rate structures are not designed merely to favor the revenues of producers and carriers. The Commission has the consumer interest to safeguard as well. And when it undertakes to accommodate the interest of the three, great complexities are often encountered. The economics of the bituminous coal industry have baffled even experts. We would depart from our competence and our limited function in this field if we undertook to accommodate the factors of transportation conditions, distance and competition differently than the Commission has done in this case. That is a task peculiarly for it. In fashioning what the Commission called a differentially related and finely balanced rate structure for this coal, there is no place for dogma or rigid formulae. The problem calls for an expert, informed judgment on a multitude of facts. The result is that the administrative ratemaker is left with broad discretion as long as no statutory requirement is overlooked. Yet that is, of course, precisely the nature of the administrative process in this field. Board of Trade of Kansas City, Mo. v. United States, 314 U.S. 534, 548, 62 S.Ct. 366, 86 L.Ed. 432; New York v. United States, 331 U.S. 284, 347–349, 67 S.Ct. 1207, 91 L.Ed. 1492; Ayrshire Collieries Corp. v. United States, 335 U.S. 573, 69 S.Ct. 278, 93 L.Ed. 243.

■ It appears since Texas & Pacific Railway Co., supra, it has been recognized that varying proportional rates are an integral part of the railroad rate structure. That it is the duty of the Commission to consider not only the wishes and interests of the shippers and merchants, but to also consider the desire and advantage of the carrier, the interest of the public, and competitive factors in the origin or terminal territories. Ayrshire Collieries Corp. v. United States, supra; New York v. United States, supra.

The Commission found various conditions and circumstances that distinguished the New England Seaboard from the New York Seaboard area in giving approval to the proportional rates in this proceeding:

(a) The substantial diminishing movement of coal from the southern mines to New England Seaboard.

(b) The lack of production of coal in New England areas.

(c) Shipments of coal to New England areas from southern mines, rail and oceanic transportation, shipments of coal from Pennsylvania and West Virginia by rail routes and rail-water routes.

(d) No southern steam coal shipped by rail-oceanic transportation to New England.

(e) No market of southern mines for steam coal in New York Seaboard area—all such coal shipped from northern mines.

■ The complexities and involvements of railroad rates are not to be shifted from the shoulders of the experts commissioned to handle them to the backs of the judiciary; nor are the broad powers of judgment conferred upon the experts to be unduly hampered. Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 46 S.Ct. 500, 70 L.Ed. 941.

How well the Commission utilized the evidence before it or what weight it assigned to its various parts is not a matter upon which the court may rule. I. C. C. v. City of Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420.

■ Correctness of reasoning, soundness of conclusion or basis for determination under the overall problem of rate making are not to be inquired into by the courts. Virginian Ry. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463.

■ So in a case of alleged discrimination, findings of fact made by the Interstate Commerce Commission as to the likeness of contemporary transportation services rendered by carriers to different shippers and as to the substantial similarity of the circumstances and conditions in which they were ren-

dered, cannot be disturbed by the courts where the action of the Commission is neither arbitrary nor in excess of its authority. Seaboard Air Line Ry. Co. v. United States, supra.

 It is our judgment the Commission acted within the provisions of law in fully considering all the circumstances and conditions which reasonably applied in the promotion of commerce, i. e., the interests of the southern coal operators, the railroad carrying companies, traders and shippers in the competitive economic areas, and the welfare of the communities and public generally.

 The questions posed as to whether the proportional rates are unjust or discriminatory under the circumstances which here exist create facual matters to be determined by the Commission and not the courts; and its findings on those questions will not be disturbed if supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

We must, therefore, determine if substantial evidence exists in the record to support the findings and conclusions of the Commission. If there does, the proceeding is without legal foundation. If there does not, the complainant is entitled to some relief either before the Commission or the statutory court.

 The general principles applicable in determining the adequacy of the findings of the Commission and the sufficiency of the supporting evidence are well established. The requirements of the law are met if the Commission's findings include the ultimate ones specified by the statute and provide a rational basis for its decision, and if the findings are in turn supported by substantial evidence in the record considered as a whole. Rochester Tel. Corp. v. United States, 307 U.S. 125, 145–146, 59 S.Ct. 754, 83 L.Ed. 1147; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed.

1260; Universal Camera Corp. v. N. L. R. B., supra.

 The weight given to an administrative finding is well established. Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308. The court cannot consider the expediency or wisdom of the order, or whether, on like testimony it would have made a similar holding. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821, It is not the court's province to inquire into the soundness of the Commission's reasoning, the wisdom of its decisions, or the consistency of its conclusions with those reached in similar cases. Georgia Public Service Comm. v. United States, 283 U.S. 765, 775, 51 S.Ct. 619, 75 L.Ed. 1397. Furthermore, as stated in Interstate Commerce Commission v. Jersey City, supra [322 U.S. 503, 64 S.Ct. 1134], "the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity." In short, the findings of an administrative body should not be set aside unless the record "clearly precludes" the decision of the administrative body "from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456.

 It is likewise well established that while the essential findings of the Commission must be supported by substantial evidence in the record as a whole, consideration of the weight and value of the evidence and the inferences to be drawn therefrom are matters for the Commission alone. New England Divisions Case (Akron, C. & Y. R. Co. v. United States), 261 U.S. 184, 204, 43 S.Ct. 270, 67 L.Ed. 605; I. C. C. v. Union Pacific R. Co., supra, 222 U.S. at page 547, 32 S.Ct. at page 111; Capital Transit Co. v. United States, D.C.,

97 F.Supp. 614, 619, 621; Lang Transp. Corp. v. United States, 75 F.Supp. 915, 930.

In addition, it is not necessary that the findings be precise and detailed for "so long as the agency makes amply clear the factual basis upon which it has proceeded, there can be no ground for complaint." Capital Transit Co. v. United States, supra.

Complainant Koppers has failed to establish that the varying proportional rates have caused unjust discrimination under Section 2, or undue prejudice to it or unreasonable preference to its competitors under Section 3(1). Nor has complainant met the burden as required by law as to the financial losses alleged to have been sustained as the proximate result of the proportional rates permitted by the Commission.

 It is our considered judgment the Interstate Commerce Commission has properly carried out the powers and duties conferred upon it by the Interstate Commerce Act, that the Commission's findings of fact are fully supported by substantial evidence, and that the Commission has properly interpreted and supplied the applicable principles of law. Accordingly, plaintiff's motion for summary judgment should be denied, and motions of defendant and intervening defendants for summary judgment should be granted, and the complaint dismissed.

The court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. This cause came on to be heard before a duly constituted statutory court which was convened pursuant to statute, 28 U.S.C.A. Sections 2284(1) and 2325, to hear and determine the applications.

2. By agreement of the parties the issues were submitted upon final hearing, upon the pleadings and upon the complete record of the proceedings before the Interstate Commerce Commission.

3. Ex Parte 175, 284 I. C. C. 589, 663, the Commission on April 11, 1952 permitted the proportional rates which are the subject of this proceeding.

4. The Railroad published the permissive increases authorized by the Commission, which became effective on May 2, 1954.

5. On May 8, 1952, the complainant filed a petition for intervention and modification of the order issued by the Commission on April 11, 1952, in which it was charged that the proportional rates were in violation of Sections 2 and 3(1) of the Interstate Commerce Act.

6. The Commission by Division Two on March 10, 1954 denied relief. 292 I.C.C. 23.

7. On May 28, 1954, the complainant filed a petition for reconsideration and on October 8, 1954, the Commission denied said petition.

8. On January 3, 1955, the complainant filed suit to set aside the action of the Commission and the statutory court dismissed the proceeding on the ground that the complainant had no standing to institute the complaint and must exhaust its administrative remedy before the Commission. Koppers Co., Inc., v. United States, D.C., 132 F.Supp. 159.

9. Hearings were held by the Commission on September 21 and 22, 1955, and the proportional rates were upheld by Division Three on July 2, 1957, 301 I.C.C. 284, and the entire Commission on March 20, 1958.

10. The Interstate Commerce Commission had before it substantial evidence in support of its findings.

### Conclusions of Law

1. The court has jurisdiction of this cause and of the parties thereto.

2. The issues posed are presented in motions for summary judgment filed by the complainant, respondent and intervening respondents.

3. The Interstate Commerce Commission had jurisdiction over the proceedings wherein the orders of March 10, 1954, October 4, 1954, July 2, 1957 and March 20, 1958 were made.

4. Said orders were within the constitutional and statutory authority of the Commission, and were not arbitrary or based upon mistake of law or misapplication of the proper statutory standards. Said orders were made by the Commission upon adequate findings, supported by substantial evidence, and in accordance with the applicable law, and were and are valid and lawful in all respects.

5. The relief prayed for in the complaint should be denied and the suit dismissed, which requires the refusing of the motion of the complainant for summary judgment and the granting of the motion of the defendant and intervening defendants for summary judgment; the complainant to pay the costs.

6. An appropriate order for judgment should be submitted by the parties in accordance with the conclusions of the Statutory Court within thirty (30) days from the filing of the adjudication, in the office of the Clerk of the United States District Court for the Western District of Pennsylvania.