**CHAMBER OF COMMERCE OF FARGO, NORTH DAKOTA, Public Service Commission, State of North Dakota, Plaintiffs,**

v.

**UNITED STATES of America, Interstate Commerce Commission, Defendants,**
**Great Northern Railway Company, Northern Pacific Railway Company, Chicago, Milwaukee, St. Paul & Pacific Railroad Company, and Soo Line Railroad Company, Intervening Defendants.**

**Civ. No. 4250.**

United States District Court
D. North Dakota,
Southeastern Division.

Nov. 8, 1967.

John I. Finsness, Fargo, N. D., for plaintiffs.

John O. Garaas, U. S. Atty., Fargo, N. D., for defendant United States.

Henri F. Rush, Jr., Atty., I.C.C., Washington, D. C., for defendants Interstate Commerce Commission and United States.

Frank J. Magill, of Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, N. D., for all intervening defendants.

Thomas H. Ploss, Gen. Atty., Chicago, M., St. P. & P. R. Co., Chicago, Ill., for intervening defendant Chicago, M., St. P. & P. R. Co.

Charles H. Clay, Gen. Atty., Soo Line R. Co., Minneapolis, Minn., for intervening defendants Soo Line R. Co., Great Northern Ry. Co. and Northern Pac. Ry. Co.

Before BLACKMUN, Circuit Judge, and DEVITT and REGISTER, Chief District Judges.

REGISTER, Chief Judge.

Plaintiffs bring this action under Sections 1336, 1398, 2321, 2322 and 2323 of Title 28, United States Code, which provide, inter alia, for suits to enjoin, set aside, annul and suspend orders of the Interstate Commerce Commission. The matter was heard by this three-judge court, pursuant to Sections 2284 and 2321–2325, Title 28, United States Code.

By their joint complaint filed January 3, 1967, the Plaintiffs seek to enjoin, annul, set aside and remand certain orders of the Interstate Commerce Com-

mission in a proceeding entitled "Chamber of Commerce of Fargo, North Dakota, et al. v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Docket No. 34584 and Sub. No. 1, North Dakota Public Service Commission v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company," including that decision and order of July 1, 1966 dismissing the complaint and affirming and adopting, by the Rates and Practices Review Board, the statement of facts, conclusions and findings of the Examiner. The Plaintiffs contend that such findings are not based on substantial evidence and are contrary to the evidence, and that such findings and order are erroneous in law, not in accordance with the law, and are arbitrary, capricious, null and void. Following filing of the complaint, a joint answer thereto was duly filed by the Defendants and thereafter, upon application to and order of this Court, the intervenors were permitted to intervene as parties defendant pursuant to Section 2323, Title 28, United States Code, and their answer, also denying Plaintiff's allegations of error in the Commission's order, was duly filed.

We find that this Court has jurisdiction of the subject matter, that venue is properly laid (Section 1398, Title 28, U.S.C.A.), and that the procedural steps taken by Plaintiffs constitute complete exhaustion of their administrative remedies.

A brief statement of the facts in this case and of the history of proceedings had before the Interstate Commerce Commission is essential for an understanding of the specific issues raised.

On January 25, 1965 the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (hereinafter called Milwaukee) reduced its carload freight rates on barley from Minnesota and South Dakota stations to Minneapolis and St. Paul, Minnesota, below the normal, maximum level of rates earlier prescribed by the In-terstate Commerce Commission, as adjusted by various authorized increases. Such reductions were made after Milwaukee analyzed the effect of reductions made in 1964 by the competing Chicago and North Western Railway Company (hereinafter called C&NW) on barley rates from South Dakota and Minnesota origins to Minneapolis. Milwaukee determined that C&NW's subnormal rate level, unless met, would result in barley destined for Minneapolis moving away from Milwaukee's elevators to C&NW elevators and routing, in order to secure the higher country elevator prices [1] resulting from the lower C&NW rates.

Neither C&NW in 1964, nor Milwaukee in January 1965, reduced rates on barley from North Dakota. The initial reductions by C&NW and Milwaukee in South Dakota and Minnesota left rates at border stations in these two states substantially lower than rates on barley to Minneapolis and St. Paul from neighboring border stations in North Dakota on the lines of the two railroads—thus creating rate disparities (commonly known as "rate humps") between relatively nearby communities, along the state borders.

The Chamber of Commerce of Fargo, North Dakota, and various elevator operators located at stations on the Fargo branch line of Milwaukee filed their complaint with the Interstate Commerce Commission, attacking the carload freight rates on barley maintained by Milwaukee from its Fargo branch line stations in North Dakota to Minneapolis and St. Paul, Minnesota. The Public Service Commission of the State of North Dakota subsequently filed its complaint, involving all North Dakota origins of Milwaukee to the same destinations, and also attacking carload freight rates on barley from North Dakota origins of C&NW. The complainants alleged that carload freight rates on barley from North Dakota stations of these

1. The country elevator price is generally the Minneapolis price less the freight rate from country elevator to Minneapolis (Doc. F, page 19). The lower the freight rate, therefore, the higher the price the farmer will net in selling to the country elevator.

two railroad defendants were unjust and unreasonable in violation of Section 1 (5), 49 U.S.C.A.,[2] and unduly prejudicial to North Dakota shippers and unduly preferential of Minnesota and South Dakota shippers located on the lines of these two railroads in violation of Section 3 (1), 49 U.S.C.A.[3] The basis for such contentions was the fact that carload freight rates on barley to Minneapolis and St. Paul maintained by these two railroads were substantially higher, distance considered, from North Dakota stations than from Minnesota and South Dakota stations. C&NW, following receipt of the complaint, agreed to reduce its North Dakota rates from its only two North Dakota stations (Ludden and Oakes) to the level maintained from its South Dakota stations. After effecting this change, the North Dakota Public Service Commission petitioned the Interstate Commerce Commission to dismiss the complaint against C&NW, and the Commission did so. Milwaukee revised and adjusted its reductions in the border areas of Minnesota and South Dakota by grading up its rates in these two states geographically, as its lines approach the North Dakota border, to the approximate normal level of rates* in North Dakota thus reducing Milwaukee's former "rate humps" to approximately normal grading patterns. The Interstate Commerce Commission assigned or set the proceedings for disposition by "modified procedure" (which eliminates oral hearing and provides for the submission of all testimony and arguments in writing) pursuant to the Commission's General Rules of Practice, 49 C.F.R., Sec. 1.45–1.54. Thereafter this procedure was accomplished, statements of facts and arguments were duly filed with the Commission by the complainants, the Milwaukee, and the other railroads (which were permitted by the Commission to intervene in said proceedings), following which the Examiner filed his report and recommended order. The various Orders of the Commission here under attack were thereafter issued, served and filed in due course. The effect of such orders (herein attacked) was to dismiss the complaints for failure by the complainants to sustain their burden of proof, and to deny to complainants the reduction in Milwaukee's North Dakota barley freight rates which they sought in connection therewith.

The limited scope of judicial review of the Commission's Order is prescribed by the Administrative Procedure Act, Title 5, U.S.C. Sec. 1009(e). This Court has the duty to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or unsupported by substantial evidence. Otherwise, such action, findings, and conclusions must be sustained.

The Supreme Court succinctly stated, in Mississippi Valley Barge Line Co. v. United States, et al., 292 U.S. 282, at pages 286–287, 54 S.Ct. 692, at page 694, 78 L.Ed. 1260:

" * * * The structure of a rate schedule calls in peculiar measure for

---

2. (5) All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful.

3. (1). Undue preferences or prejudices prohibited. It shall be unlawful for any common carrier subject to the provisions of this chapter to make, give, or cause any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, association, lo-

cality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic, in any respect whatsoever; or to subject any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever: *Provided, however*, That this paragraph shall not be construed to apply to discrimination, prejudice, or disadvantage to the traffic of any other carrier of whatever description.

the use of that enlightened judgment which the commission by training and experience is qualified to form. [State of] Florida v. United States, 292 U.S. 1, 54 S.Ct. 603, 78 L.Ed. 1077. It is not the province of a court to absorb this function to itself. I. C. C. v. Louisville & Nashville R. Co., 227 U.S. 88, 100, 33 S.Ct. 185, 57 L.Ed. 431; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941; Virginian Ry. Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463. The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. * * *"

In Interstate Commerce Commission et al. v. Martin Brothers Box Co., 219 F.2d 811, at p. 813 (9 Cir., 1955), in discussing the narrow scope of judicial review of the Commission's orders, the Court stated:

"* * * It is a long-established principle that such orders are not to be set aside by a court if they are within the Commission's statutory power and are supported by substantial evidence. Interstate Commerce Commission v. Union Pacific R. R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308. To consider the weight of the evidence before the Commission, or the soundness of the reasoning by which its conclusions were reached, is beyond the province of the courts. Virginian Ry. Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463. * *"

See, also: Hart et al. v. Interstate Commerce Commission, 226 F.Supp. 635, 641, (D.C., Minn., 1964), and State Corporation Commission of State of Kansas v. United States of America, 184 F.Supp. 691, 696, (D.C., Kan., 1959).

 The ultimate legal issue before us is the validity of the Commission's conclusion that "the rates assailed have not been shown to be unjust, unreasonable or unduly prejudicial or preferential." While it is the duty of the Court, in making the necessary determination,

to "review the whole record or such portions thereof as may be cited by any party" (5 U.S.C.A., Sec. 1009(e)) in order to determine the validity of the action of the Commission and whether it is supported by evidence, this Court has no authority to review the weight of the evidence, and if such action is supported by evidence, its judgment is final. Interstate Commerce Commission et al. v. City of Jersey City et al., 322 U.S. 503, 512, 64 S.Ct. 1129, 88 L.Ed. 1420. "The wisdom or expediency of the Commission's order is not for us to pass upon." Northern Pacific Railway Company et al. v. United States (Interstate Commerce Commission et al., Intervenors), 41 F. Supp. 439, 446, (D.C., Minn., 1941). If the Court finds in the record a rational basis for the conclusions of the Commission, our function is ended. Mississippi Valley Barge Line Co. v. United States et al., supra. This Court has carefully reviewed and examined the entire record of the proceedings before the Commission. It should, of course, be borne in mind that whenever a violation of any Section of the Interstate Commerce Act is charged, the burden of proof is on the complainant, Koppers Company, Inc. v. United States, 166 F.Supp. 96, 99–100, (D.C., Pa., 1958), and that "* * * the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity." Interstate Commerce Commission et al. v. City of Jersey City et al., supra, 322 U.S. at page 512, 64 S.Ct. at page 1134.

We will first consider the record as it relates to the alleged Section 1(5) violation. The charges prohibited by this Section are those which are "unjust and unreasonable." The record contains nothing to show that the assailed rates are unjust and unreasonable per se—in fact, Plaintiffs concede that such charges are not intrinsically unreasonable. The sole basis of Plaintiffs' complaint is that such charges are "unjust" as compared to, or measured by, the barley freight rates being maintained by Milwaukee in

South Dakota and Minnesota. In effect, Plaintiffs interpret the term "unjust and unreasonable" in the disjunctive, rather than the conjunctive, argue that by such terminology the statute creates or establishes two standards, and contend that although the charges may be intrinsically reasonable, in order to be "just" the charges must be "relatively reasonable."

█ The record discloses that the issue based upon the expression of this theory or doctrine was not specifically raised before the Commission, or passed upon by it, and hence probably should not be capable of receiving consideration here. It is well established that, in reviewing an order of the Commission, a court is confined to considering only those errors that were specifically relied upon by the Plaintiff before the Commission, and that matters which are not brought to the attention of the administrative body or contentions not made before the Commission and relied on there may not be raised for the first time in court. United States et al. v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54; United States et al. v. Capital Transit Co., et al., 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93; McGraw Electric Co. et al. v. United States et al., 120 F.Supp. 354, 359, (D.C., Mo., 1954); Watkins Motor Lines, Inc. v. United States of America et al., 252 F.Supp. 1017, 1019–1020, (D.C., Ga., 1966); Hart et al. v. Interstate Commerce Commission, supra, 226 F.Supp. at p. 643. However, in view of Plaintiffs' strenuous argument that their contentions and arguments before the Commission were sufficiently broad and general to support this challenge, in that before the Commission they complained about "unreasonable differences," "unfair rates," "difference in rate treatment," and contended that "relative unreasonableness is implicit in a Section 1 allegation," we deem it advisable to consider this contention briefly.

█ No statutory sanction exists for this theory, other than the terms of the Section which require all rates to be just and reasonable, and our attention has not been called to, nor have we found,

any judicial support therefor. This proposition has been carefully considered by the Commission, which has consistently held that a comparison with depressed rates cannot be relied upon to show that the compared rates are unreasonably high, Rudolph Wurlitzer Company v. Chicago, Burlington & Quincy Railroad Company et al., 235 I.C.C. 91 (1939), Traffic Bureau, Lynchburg Chamber of Commerce v. Chesapeake & Ohio Railway Company et al., 234 I.C.C. 765 (1939), and Twin City Iron and Metal Company, Inc. v. Baltimore & Ohio Railroad Company et al., 300 I.C.C. 281, 284 (1957), and the concept of "relative unreasonableness" as being properly cognizable under Section 1(5), as here argued by the Plaintiffs, has consistently been rejected by the Commission, Lackawanna Steel Company et al. v. Director General as Agent, Pennsylvania Railroad Company et al., 87 I.C.C. 383 (1924), W. J. Foye v. Atchison, Topeka & Santa Fe Railway Company et al., 255 I.C.C. 466 (1943), and Southern Wyoming Coal Operators Association v. Chicago, Burlington & Quincy Railroad Company et al., 264 I.C.C. 593 (1946).

█ It is clear that appropriate rate comparisons are one method of determing the reasonableness of rates, and, in making such determination, consideration may properly be given to prescribed and prevailing rates or rate basis. The record discloses that North Dakota is the leading barley producing state in the nation, and the bulk of barley receipts at Minneapolis and St. Paul originate in North Dakota. The rates prescribed and approved by the Commission are the prevailing rates maintained by the Defendant and all of the intervenors, from all origins in North Dakota to those destinations. Plaintiffs concede that these rates are not intrinsically high— that is, higher than justified by the service rendered. However, Plaintiffs seek to use as their sole yardstick wherewith to measure the reasonableness of the assailed rates, the concededly subnormal and depressed rates being maintained in South Dakota and Minnesota by the De-

fendant, and, further, place significance upon the reduction by C&NW of their rates from Ludden and Oakes to those prevailing in the adjoining states. We believe these C&NW adjusted rates, made subsequent to the institution of the proceedings before the Commission, may be properly considered "compelled rates"; they relate solely to two small stations near the state line; they affect a very small movement of barley, and have no probative value as to whether the otherwise Commission-approved and prevailing rates throughout North Dakota are reasonable and just. It is also clear, and in fact conceded by the Plaintiffs, that the South Dakota and Minnesota rates are subnormal and depressed, and are the result of competitive factors or problems not existing in or directly related to the State of North Dakota. It seems obvious (and we hold) that such subnormal and depressed rates (being the only rate comparisons submitted and relied upon by the complainants) are not an appropriate standard or test by which to determine whether the North Dakota rates are unjust and unreasonable. We conclude, therefore, that no relief is available to the Plaintiffs under the provisions of Section 1(5), because: (a) the assailed rates are concededly not unjust and unreasonable per se; (b) the issue of "relative unreasonableness" was not specifically raised before the Commission; and (c) the record discloses no showing by the Plaintiffs that the assailed rates are unjust and unreasonable. In fact, the record discloses only a geographical rate differential and the difference by itself is insufficient as a basis for relief. Plaintiffs have therefore failed to sustain their burden of proof as to this alleged violation.

 Plaintiffs also challenge the Commission's ultimate conclusion that they failed to sustain their burden of proving the alleged violation by Defendant of Section 3(1) of the Act. As to this charge, the burden is on the Plaintiffs to establish that the Defendant, by virtue of the assailed rates, is subjecting them to an "undue or unreasonable prejudice or disadvantage."

 Plaintiffs place great reliance upon that portion of the record which discloses a substantial rate disparity between Oakes, North Dakota (which is on C&NW), and Ellendale, North Dakota (which is on Milwaukee), which stations are approximate equidistant from Minneapolis—St. Paul, and a similar disparity in the rates between Fairmont, North Dakota and Sisseton, South Dakota (both of which are on Milwaukee) approximately equidistant from said destination, and likewise in about the same general farming area. However, Plaintiffs' burden is not met by a mere showing of disparity of rates. "But mere discrimination does not render a rate illegal under section 3. Only such rates as involve unjust discrimination are obnoxious to that section." United States et al. v. Illinois Central Railroad Company et al., 263 U.S. 515, 521, 44 S.Ct. 189, 192, 68 L.Ed. 417. Furthermore, " * * * both the Interstate Commerce Commission and the federal courts have ruled that undue prejudice or preference does not exist unless the transportation conditions with regard to the prejudiced and preferred points are substantially similar." (Citations) Atchison, Topeka and Santa Fe Railway Co. et al. v. United States, 218 F.Supp. 359, 366, (D.C., Ill., 1963); and, "In determining whether there is a prohibited unjust discrimination or undue preference, it is for the Commission to say whether such differences in conditions exist and whether, in view of them, the discrimination or preference is unlawful." United States et al. v. Wabash Railroad Co. et al., 321 U.S. 403, 411, 64 S.Ct. 752, 755, 88 L.Ed. 827.

The Supreme Court, in L. T. Barringer & Co. v. United States et al., 319 U.S. 1, at p. 7, 63 S.Ct. 967, 971, 87 L.Ed. 1171, stated: "It has long been established by our decisions that differences in competitive conditions may justify a relatively lower line-haul charge over one line than another, and that it is for the

Commission, not the courts, to say whether those differences are sufficient to show that a difference in rates established to meet those conditions is not an unjust discrimination or otherwise unlawful."

As previously pointed out, the transportation conditions affecting the Oaks-Ellendale situation involve a carrier-competitive situation—a fact which, the record clearly discloses, properly received the careful consideration of the Examiner and Commission.

 While no such competition exists as to Fairmont-Sisseton, Defendant correctly asserts that, in order to sustain their burden, Plaintiffs are required to establish injury to those allegedly discriminated against, Illinois Central Railroad Company et al. v. United States, 101 F.Supp. 317, 323, (D.C., Ill., 1951); Atchison, Topeka and Santa Fe Railway Co. v. United States, supra, 218 F.Supp. p. 369. As a part of Plaintiffs' case before the Commission, sworn statements of operators of elevators at several small stations on the Milwaukee, located in North Dakota, north of Wheaton, South Dakota, were submitted. These statements in effect constituted expressions of opinions and estimates as to potential or future damage they expected to suffer from the rate disparities. However, the record is devoid of any showing as to specific evidentiary facts covering damage which had actually resulted therefrom or as to the nature or extent of the competition for barley existing between the elevator operators at the allegedly prejudiced and preferred stations. There was no evidence submitted by Plaintiffs specifically showing that the rate adjustments had in fact resulted in decreased sales of barley to the elevator operators allegedly prejudiced thereby, or had in fact operated to the complainants' disadvantage. The credibility of witnesses and the weight to be given their testimony is basically, and primarily, within the sound discretion of the Commission, and it is beyond the province of the court to evaluate de novo the Plaintiffs' witnesses or to substitute its judgment for that of the Commission as to the weight which should be accorded to their testimony. Lynchburg Traffic Bureau v. United States et al., 84 F.Supp. 1012, (D.C., Va., 1949).

 From the record and arguments, it appears to us that some prejudice and some preference has been established, and that the assailed rates may very likely cause some disadvantage to a few elevator operators on the Milwaukee, located in the Fairmont, North Dakota area, and to the advantage of those operating on the subnormal, depressed, rate schedule in the Wheaton and Sisseton, South Dakota communities. With this situation the Court is concerned, and believes that it merits effort on the part of the affected shippers and the Milwaukee towards further adjustments. However, identity of rates is not required. Some discrepancies are virtually inherent in any rate structure, particularly in the vicinity of state boundaries wherein different rate structures exist, and such discrepancies per se are not illegal. From a practical standpoint, it would be virtually impossible to completely eliminate or obviate all discrepancies or "rate humps" at or near state borders, and, within permissible limits, such rate-making is within the zone of managerial discretion or judgment. It is only an "undue or unreasonable preference or advantage" or an "undue or unreasonable prejudice or disadvantage" that is prohibited by Section 3(1). In considering the meaning of these controlling phrases, in Stanislaus County v. United States et al., 236 F.Supp. 146, at p. 148 (D.C., Calif., 1964), the Court stated: "Congress has not seen fit to provide the Commission with a definition of these phrases. The courts have regarded the definition as a question committed largely to the sound judgment of the Commission to be determined by the Commission in a case by case fashion (citations). Such a determination involves a finding on a mixed question of law and fact

by the Commission in each case, and the Commission's conclusion may be upheld by the court on judicial review only if there is a 'rational basis' in law for the conclusion thus reached (citations)." The Supreme Court, in Board of Trade of Kansas City et al. v. United States et al., 314 U.S. 534, at page 546, 62 S.Ct. 366, at page 372, 86 L.Ed. 432, in commenting on the meaning of these phrases, and "The wisdom of the narrow scope within which Congress has confined judicial participation in the rate-making process * * *," in part said:

"The Act forbids the Commission to establish a rate structure which would give one transit point an 'undue or unreasonable preference or advantage' and would subject another point to an 'undue or unreasonable prejudice or disadvantage'. But this does not mean that the law compels identity of treatment for like services at different places. It prohibits only 'undue' or 'unreasonable' discriminations. 'Whether a preference or advantage or discrimination is undue or unreasonable or unjust is one of those questions of fact that have been confided by Congress to the judgment and discretion of the Commission * * *, and upon which its decisions, made the basis of administrative orders operating *in futuro,* are not to be disturbed by the courts except upon a showing that they are unsupported by evidence, were made without a hearing, exceed constitutional limits, or for some other reason amount to an abuse of power.' Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 481, 38 S.Ct. 383, 62 L.Ed. 831; see Nashville, C. & St. L. Ry. v. [State of] Tennessee, 262 U.S. 318, 322, 43 S.Ct. 583, 585, 67 L.Ed. 999; United States v. Chicago Heights Trucking Co., 310 U.S. 344, 352–353, 60 S.Ct. 931, 935, 936, 84 L.Ed. 1243."

See, also, State of New York et al. v. United States et al., 331 U.S. 284, 347, 67 S.Ct. 1207, 91 L.Ed. 1492.

 We are satisfied from a careful examination of the entire record that the same discloses a rational basis for the conclusions of the Commission, to the effect that Plaintiffs failed to sustain their burden of proof as to the alleged violation of each of the required statutory standards, that the orders here attacked were made and issued within its statutory power, and are supported by substantial evidence, and that, therefore, this Court cannot interfere therewith.

Counsel for the Defendant will promptly submit appropriate form of Judgment in harmony herewith.