**ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al.,**
Plaintiffs,

v.

**UNITED STATES of America and Interstate Commerce Commission et al.,**
Defendants.

Civ. A. No. T–2393.

United States District Court
D. Kansas.

April 28, 1961.

Ralph M. Buzek, Asst. Gen. Counsel, Baltimore and Ohio Railroad, Chicago, Ill.; R. W. Henriott, Gen. Atty., Louisville & Nashville R. R., Louisville, Ky.; M. L. Cassell, Gen. Solicitor, Chicago, Rock Island and Pacific R. R., Chicago, Ill.; and Clayton M. Davis, Topeka, Kan., for plaintiffs.

Donald L. Hardison, Dept. of Justice, Washington, D. C.; and George T. Van Bebber, Asst. U. S. Atty., D. of Kansas, Kansas City, Kan., for the United States.

Fritz R. Kahn, Washington, D. C., for Interstate Commerce Commission.

Byron M. Gray, Topeka, Kan., for State Corp. Commission, The Board of Trade of Kansas City, Mo., and The Kansas-Missouri River Mills.

Richard Freeman, Chicago, Ill., for American Commercial Barge Line Company, Federal Barge Lines, Inc., and American Waterways Operators, Inc.

Charles J. McCarthy, Knoxville, Tenn., Atty., Supreme Court of Tennessee, for Tennessee Valley Authority, and all of the Tennessee River interests.

Wilbur S. Legg, Chicago, Ill., for A. L. Mechling Barge Lines, Inc.

David G. MacDonald, Washington, D. C., for Arrow Trans. Co.

William Goebel, Chicago, Ill., for Ill. Agricultural Assoc.

Alfred B. Page, Topeka, Kan., local counsel for American Commercial Barge Line Co., Federal Barge Lines, Inc., American Waterways Operators, Inc., A. L. Mechling Barge Lines, Inc.

Before BRATTON, Circuit Judge, HILL, Chief Judge, and STANLEY, District Judge.

HILL, Chief Judge.

This action authorized by the Provisions of 28 U.S.C.A. § 1336, was instituted by the Atchison, Topeka and Santa Fe Railway Company [1] and against the United States and the Interstate Commerce Commission [2] to enjoin, set aside and annul a report and order of the Commission entered March 24, 1959, in a proceeding entitled American Barge

Line Company v. Alabama G.S.R. Company, 306 I.C.C. 167.

This case involves rates for the movement outbound from various river ports of grain and grain products which have arrived at those ports by barge.

The issues before this Court are whether the Commission correctly held (1) that the application of local rates to ex-barge traffic and lower proportional rates to ex-rail traffic from certain ports on the Mississippi, Missouri, and Ohio Rivers violates Section 3(4) of the Interstate Commerce Act and,[3] (2) that the application of local rates to ex-barge traffic from ports on the Tennessee River and from New Orleans at the same time that lower proportional rates apply to ex-barge traffic from the port of Memphis constitutes unlawful preference to the port of Memphis and unlawful prejudice to the Tennessee River ports and to New Orleans in violation of Section 3(1) of the Act.[4]

1. The State Corporation Commission of Kansas, Board of Trade of Kansas City, Missouri, and Kansas-Missouri River Mills intervened as parties plaintiff.

2. The complainants in the Commission proceeding, American Commercial Barge Lines Co., Inc., Federal Barge Line, Inc., and Arrow Transportation Company intervened as parties defendant. American Waterways Operators, Inc., State of Alabama, Alabama Public Service Commission, State of Tennessee, Tennessee Public Service Commission, Alabama Farm Bureau Federation, City of Guntersville, Alabama, Guntersville Chamber of Commerce, Chattanooga Area Milk Producers Association, Chattanooga Chamber of Commerce, Knoxville Chamber of Commerce, City of Decatur, Alabama, Decatur Chamber of Commerce, Farmers Union Grain Terminal Association, Indiana Farm Bureau Cooperative Association, Inc., Tennessee Farm Bureau Federation, Tennessee Valley Authority, Illinois Agricultural Association, and A. L. Mechling Barge Line, Inc., also intervened as parties defendant.

3. Section 3(4) of the Interstate Commerce Act:

"All carriers subject to the provisions of this chapter shall, according to their respective powers, afford all reasonable, proper and equal facilities for the inter-

change of traffic between their respective lines and connecting lines, and for the receiving, forwarding, and delivering of passengers or property to and from connecting lines; and shall not discriminate in their rates, fares, and charges between connecting lines, or unduly prejudice any conecting line in the distribution of traffic that is not specifically routed by the shipper. As used in this paragraph the term 'connecting line' means the connecting line of any carrier subject to the provisions of this chapter or any common carrier by water subject to chapter 12 of this title." 49 U.S.C.A. § 3(4).

4. Section 3(1) of the Interstate Commerce Act:

"It shall be unlawful for any common carrier subject to provisions of this chapter to make, give or cause any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory or any particular description of traffic, in any respect whatsoever; or to subject any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect

The history of this litigation is long, the same being commenced over ten years ago, by a complaint filed with the Commission in January of 1951. A detailed recital of the sequence of events would serve no useful purpose; they are detailed in an action involving a phase of this case before the United States District Court for the Northern District of Alabama. Arrow Transportation Company v. United States, 176 F.Supp. 411, affirmed, 361 U.S. 353, 80 S.Ct. 406, 4 L. Ed.2d 362.

■ At the outset it should be stated that this Court is fully cognizant of the well settled law that the orders of the Interstate Commerce Commission should not be set aside, modified or disturbed by a court, on review, if they lie within the scope of the Commission's authority, are based upon adequate findings and are supported by substantial evidence. Judicial review in this matter then is very limited.

Let us pass to a brief review of the facts of the controversy. A substantial surplus of grain is produced in the Midwestern Grain Belt. A deficit exists in areas of the Southeast, where there are expanding livestock and poultry industries. There is a substantial and growing movement of grain from the Midwest to the South.

Under the existing rate structure the railroads charge their full local rates for the transhipment by rail of grain and grain products from a number of Ohio, Mississippi, and Missouri River ports to destinations in the South when the shipment has had a prior movement to the port via barge (ex-barge), whereas they charge lesser rates from those same river ports to the same destinations when the grain and grain products have had a prior movement to the ports via rail (ex-rail).

The circumstances surrounding the handling of ex-rail and ex-barge grain at the river ports are the same. Both the inbound car and inbound barge are placed at the elevator's point of unloading where the grain is unloaded by, and comes into the possession and control of, the elevator where it loses its identity. When the elevator operator later ships out an equal amount of grain, he orders and loads a rail car which is then shipped to a new destination. When a rail freight bill is surrendered the outbound railroad charges a proportional rate lower than the local rate otherwise applicable. When the grain loaded outbound is supported by an inbound barge bill, the physical treatment is identical. But at ports where proportional rates do not apply to ex-barge grain, the ex-barge grain is assessed the full local rate when it is reshipped. From some of the Mississippi River ports, including Memphis, the railroads publish equal proportional rates on ex-rail and ex-barge grain. No Section 3(4) issue is presented as to those rates.

Grain can move by barge from Midwestern ports such as Kansas City, Minneapolis, and Peoria to Memphis, New Orleans, or any of the ports on the Tennessee River from which it can be transhipped by rail to its destination in the South. The Tennessee River ports and the port of New Orleans are in direct competition with the port of Memphis for this traffic.

The handling of ex-barge grain is the same at all of the ports. At Memphis the elevator operator surrenders the inbound bill of lading and receives a proportional rate lower than the local rate. At the Tennessee River ports and at New Orleans, he must pay the full local rate. There is no factual showing in the record to justify this difference in treatment.

■ The higher level of rates which applies on ex-barge traffic from the Tennessee River ports and from New Orleans makes it difficult for those ports to compete with the port at Memphis. This rate structure inhibits the movement of barge grain beyond the ports. The high-

whatsoever; Provided, however, that this paragraph shall not be construed to apply to discrimination, prejudice, or advantage to the traffic of any other carrier of whatever description."

er ex-barge rates from the Tennessee River ports have deprived shippers of the inherent advantage of barge transportation as required by the National Transportation Policy.[5]

■■ Suffice it to say the findings of the Commission of discrimination against barge lines under Section 3(4) and the findings of undue preference to the port of Memphis and undue prejudice to the Tennessee River ports and New Orleans, are amply supported by substantial evidence.

The railroads introduced a cost study which compared the cost to the outbound railroad of handling grain and grain products from Memphis which had a prior movement via barge, with grain and grain products which had a prior movement by rail. On the ex-rail side of the equation, the cost study commingled grain which passed through Memphis without a stop in transit for elevation or processing grain products which passed without stop-in-transit, and grain which was elevated or processed at these ports and was transhipped.

■ The plaintiffs argue that the Commission erred in rejecting the railroads cost evidence. The railroads had the burden of proving a difference in the cost of handling like traffic. They failed to carry this burden. The cost evidence introduced by the railroads does not compare like with like, Interstate Commerce Commission v. Mechling, 1947, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102.

Almost all, if not all, the legal issues raised by the plaintiffs were raised as defenses in Arrow Transportation Co. v. United States, 1959, 176 F.Supp. 411, affirmed 361 U.S. 353,[6] 80 S.Ct. 406, 4 L.Ed. 2d 362. When counsel for the railroads were asked by the court to explain their position with respect to the Arrow case, they argued that the Arrow case involved merely the question of whether the divisions received on ex-rail movements over the Tennessee River ports were improperly excluded as evidence. We believe the holding went much further.

As to the Tennessee River interests it would seem to bar plaintiffs from relitigating the Section 3(1) issue. As to the Section 3(4) issue, the Arrow case seems a precedent squarely in point.

The threshold question presented in the Arrow case was whether there is Section 3(4) discrimination. In order to decide the question the Alabama Court had to dispose of the same contentions as plaintiffs herein argue. (1) Is the barge line a "connecting carrier" within the meaning of Section 3(4)? (2) Must there be findings of "public interest" under Section 15(3), 49 U.S.C.A. § 15 (3)? (3) Must the barge lines expressly seek joint rates with the railroads? The Alabama Court discussed each of these questions, and held that none of the arguments constituted a valid reason for denying relief. Moreover, this Court is in complete agreement with that Court.

■ We believe the railroads and the barge lines are "connecting carriers" within the meaning of Section 3(4) of Title 49 U.S.C.A. Interstate Commerce Commission v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102; Dixie Carriers v. United States, 1956, 351 U.S. 56, 76 S.Ct. 578, 100 L.Ed. 934; and Arrow Transportation Company v. United States, 1959, 176 F.Supp. 411, affirmed 1960, 361 U.S. 353, 80 S.Ct. 406, 4 L.Ed. 2d 362.

5. Transportation Act of 1940, Sec. 1, 49 U.S.C.A. note preceding section 1.

6. In the Arrow case, the Tennessee River Interests were the plaintiffs and the major Southern and Midwestern railroads who are plaintiffs in this case filed answers to the complaint and participated as intervening defendants. The State Corporation Commission of Kansas and allied interests who have intervened in support of the plaintiffs in this case were also intervening defendants in the Arrow case.

■ If relief is necessary to cure a discrimination against water transportation in violation of some provision of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., there is no requirement, as a condition of relief, that the barge lines be parties to "through routes" or that the Commission make a finding under either Sections 15(3) or 307(d) of the Act. Nor does Section 4 of the Act impose a condition on the power of the Commission to act. The Commission is empowered by the Act to grant relief in such form as is required to remedy the violation of Section 3(4). Interstate Commerce Commission v. Mechling, supra; Dixie Carriers v. United States, supra; and Arrow Transportation Company v. United States, supra.

■ The failure of the railroads to publish proportional rates when grain and grain products from river ports to the South have had a prior movement by barge to those ports on the same basis as the proportional rates applicable when the grain and grain products have arrived by rail is discriminatory under Section 3(4) of the Act. Interstate Commerce Commission v. Mechling, supra, and Arrow Transportation Company v. United States, supra.

■ The failure of the railroads to publish proportional rates from the Tennessee River ports and New Orleans on grain and grain productions which have had a prior movement to those ports by barge on the same relative level as the railroads publish on grain arriving by barge at Memphis is unduly preferential to the port of Memphis and unduly prejudicial to Tennessee ports under Section 3(1). Arrow Transportation Company v. United States, supra.

Judgment in this case wil be entered in conformity with the views expressed herein.

Counsel for the prevailing parties will please prepare and submit an appropriate Journal Entry of Judgment but it will not be entered until after notice to all parties.