**CHICAGO, ROCK ISLAND & PACIFIC R. CO., et al., Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**No. 63 C 145(3).**

United States District Court
E. D. Missouri, E. D.

Aug. 24, 1964.

---

5. Sec. 5(b) provides:

382

Don McDevitt, Chicago, Ill., for Chicago, R. I. & P. R. Co.

J. C. Ashton, Jr., St. Louis, Mo., for St. Louis-S. F. Ry. Co.

R. H. Stahlheber, St. Louis, Mo., for Missouri Pac. R. Co.

J. C. Danielson, Chicago, Ill., for Chicago & N. W. Ry. Co.

Robert W. Ginnane, Gen. Counsel, Fritz R. Kahn, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

John H. D. Wigger, Dept. of Justice, Washington, D. C., Richard D. Fitz-Gibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for the United States.

Nuel D. Belnap, Chicago, Ill., Thompson, Mitchell, Douglas & Neill, and Wm. Guerri, St. Louis, Mo., for Federal Barge Lines and American Commercial Barge Line Co.

Donald Macleay, Washington, D. C., John C. Lovett, Benton, Ky., Thompson, Mitchell, Douglas & Neill and Wm. Guerri, St. Louis, Mo., for Arrow Transp. Co.

Joe Starnes, Jr., Guntersville, Ala., Thompson, Mitchell, Douglas & Neill and Wm. Guerri, St. Louis, Mo., for City of Guntersville, Alabama, Alabama Farm Bureau Federation and Guntersville Chamber of Commerce.

John A. Caddell, Decatur, Ala., Thompson, Mitchell, Douglas & Neill and Wm. Guerri, St. Louis, Mo., for City of Decatur, Ala., and Decatur Chamber of Commerce.

John C. Lovett, Benton, Ky., Thompson, Mitchell, Douglas & Neill, and Wm. Guerri, St. Louis, Mo., for Farmers Union Grain Ass'n and Indiana Farm Bureau Coop. Ass'n.

Fenner Heathcock, Union City, Tenn., for Tennessee Farm Bureau Federation.

Charles J. McCarthy, Gen. Counsel, Knoxville, Tenn., Thompson, Mitchell, Douglas & Neill and Wm. Guerri, St. Louis, Mo., for Tennessee Valley Authority.

Stuart Symington, Jr., St. Louis, Mo., Alexander B. Hawes, Washington, D. C., for Waterways Bulk Transp.

Before MATTHES, Circuit Judge, and HARPER and REGAN, District Judges.

REGAN, District Judge.

This action is brought to enjoin, set aside, suspend and annul the Interstate Commerce Commission's Report and Order dated July 6, 1962, as amended by a Corrected Order dated January 30, 1963, and served February 25, 1963. The Commission, in those orders, found that railroad rates on grain and grain products for outbound shipment from certain river ports to inland destinations, which grain had previously been transported by for-hire barges, were discriminatory and in violation of sections 2 and 3(4) of the Interstate Commerce Act, 49 U.S.C. §§ 2, 3(4).

The controversy has a long history. The original complaint before the Commission filed January 4, 1951, by three water carriers (all intervening defendants herein) alleged that the railroads serving southern, southwestern and western trunkline territories charged discriminatory rates on shipments of grain and grain products previously transported by the complaining barge lines on the movements from transhipping ports on the Mississippi, Missouri, Ohio and Tennessee Rivers to inland destinations.

The rates established on ex-barge shipments, until changed by the Commission's orders, were flat-rates or stated rates from a named origin (or port) to a named destination. The rate was not dependent on the prior or subsequent transportation. On the other hand, the railroads maintained rates over all-rail routes, some hauls based on a combination of factors and others on single factor rates. On ex-rail grain, rates made on a combination of factors provided a published reshipping proportional rate from a port normally lower than the flat rate which applied to ex-barge grain. These lower proportionals applied to ex-rail grain whether or not the grain was stopped at the ports for processing or storage before the outbound shipments. In the instances where a single-factor joint rate applied to all-rail routes through a port, the various railroads performing service from the port to destination, would receive agreed-to divisions which were not published. In almost all instances the divisions from port to destination were substantially lower than the flat-rate level. The division, like the ex-rail published proportional rates, remained the same whether the grain was stopped at the ports for transit, or whether the shipment was continuous.

The water carriers complained that ex-barge rates were discriminatory insofar as they exceeded the proportional rates assessed by the railroads on all-rail shipments from the same ports on the Mississippi, Missouri and Ohio Rivers, and to the extent that the rates exceeded the division of joint-through rail rates through Mississippi and Tennessee River Ports to points in Southern Classification Territory. The water carriers asserted violations of sections 1, 2, 3(1) and 3(4) of the Interstate Commerce Act. The Commission, in its first report, found that none of the alleged violations had been sustained by the evidence, and denied to the water carriers the right to obtain data relating to the applicable divisions of all-rail joint rates which the plaintiffs sought to compare with the ex-barge rates.

Subsequently, two actions were brought to set aside the Commission's first report: American Barge Line Co. v. United States in this District, and Arrow Transportation Co. v. United States in the Northern District of Alabama. The cases were stayed when the Commission on its own motion reopened the proceedings to review the controversy in the light of Dixie Carriers, Inc. v. United States, 351 U.S. 56, 76 S.Ct. 578, 100 L.Ed. 934 (1956). In that case the complaining barge lines sought joint barge-rail routes and rates comparable to the all-rail proportional rates. The Commission found that the Dixie Carriers case was distinguishable in that the carriers in that case were willing to assume the expense of transfer of the ladings to rail cars and the tender of the cars to the outbound rail lines. The Commission further found that Dixie Carriers did not answer the controversy regarding the applicability of divisions of all-rail joint rates but was only concerned with a situation involving published rail proportionals.

The next report of the Commission, dated March 24, 1959, followed an oral reargument on all issues. The Commission reversed its holding as to the alleged unlawfulness of the ex-barge rates compared with the proportional rates on all-rail movements. The Commission held that under Mechling [Interstate Commerce Commission v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102 (1947)] and Dixie Carriers, supra, cases that section 3(4) required that no higher rate could apply to ex-barge traffic from a river port than that applicable to ex-rail traffic from that port where there was no significant difference in the service beyond that port. In so holding, the Commission determined that the barge and rail carriers were "connecting carriers" under Section 3(4). The action of the Commission was sustained in Atchison, T. & S. F. Ry. Co. v. United States, 194 F.Supp. 438 (D.Kansas 1961).

In that order, however, the Commission further held that the Mechling and Dixie Carrier Cases had no application

to ex-barge rates in comparison to divisions of all-rail joint through rates and decline to reconsider that issue.

Thereafter, Arrow Transportation Company brought suit challenging the Commission's denial of relief where ex-barge rates exceeded the divisions of all-rail rates from Tennessee River ports. In Arrow Transportation Co. v. United States, 176 F.Supp. 411 (N.D.Ala.1959) the court sustained the position of the water carrier stating at p. 419:

" * * * In either event the yardstick for measuring discrimination against ex-barge traffic is the compensation received by the outbound rail carrier on ex-rail traffic from the same port to the same destination. This is not to suggest that the division received by the outbound railroad on ex-rail traffic necessarily establishes the exact rate at which ex-barge traffic must be handled. We simply hold that the fact that the inbound carrier is a barge line rather than a railroad is not a factor which may properly be considered in fixing the charge for the outbound rail movement and that the divisions received on ex-rail movements are *prima facie* evidence as to what charge should be assessed upon ex-barge movements. The plaintiffs attempted to show the divisions received by the railroads on ex-rail traffic, but the Commission refused to receive the evidence. In this the Commission erred. Dixie Carriers v. United States, supra.

The Court further held, p. 421:

"When Congress authorized the building of a modern navigable channel in the Tennessee River, it meant for that river to be coordinated with the existing transportation system so as to make its full benefits available to shippers. The Commission has a positive duty to prescribe rates for ex-barge grain which will accomplish that end. Whether the rates are published as proportional rates or as joint rates, the charges paid by the shipper for the movement of ex-barge grain beyond the ports must be on a level which preserves intact the savings on the water leg of the journey, at ports where the inbound and outbound rail carriers are different. The Commission cannot apply the standards applicable to a local movement in determining the reasonableness under section 1 of the ex-barge rates. Likewise, it is prohibited by section 2 from permitting the discrimination between shippers which would result from charging higher rates for the outbound movement to the shipper who receives his inbound grain by barge than apply to the shipper who receives his inbound grain by rail. We construe the Supreme Court decisions in Mechling and Dixie as making unlawful any rate-making device which deprives barge transportation of its rightful place in the National transportation system or which deprives shippers of any part of the economies resulting from the use of barge transportation. We hold, therefore, that the Commission cannot lawfully approve any system of ex-barge rates on grain which deprives shippers of any of the savings of the inbound barge transportation but must prescribe ex-barge rates which will fully preserve the inherent advantages of such barge transportation.

Acting pursuant to Section 10(e) of the Administrative Procedures Act the Court remanded the case to the Commission with instructions "to enter an order prescribing lawful, reasonable, and non-discriminatory rates on ex-barge traffic from the Tennessee River ports to destinations in the Southeast."

The Court's order issued pursuant to that opinion required the Commission,

"to order as promptly as possible, the establishment of lawful, reasonable, and non-discriminatory ex-barge rail rates on grain and grain products from the Tennessee River Ports of Decatur, Sheffield, Guntersville, Alabama and Knoxville and

Chattanooga, Tennessee, to destinations in Southern Classification Territory."

Upon rehearing pursuant to the opinion and order of the District Court, Northern District of Alabama, the Commission received further evidence including representative schedules of division of the all-rail through rates through the ports in question. The ultimate findings and conclusions are set out in the order of the Commission dated January 30, 1963, served February 25, 1963. The finding of the Commission under attack in this case reads as follows:

"1. That on grain and grain products hauled by for-hire barge to the Mississippi River ports of Memphis, Tenn., Greenville and Natchez, Miss., and New Orleans and Baton Rouge, La., and moved by rail from those ports to points in southern territory or to points in Arkansas and in Louisiana west of the river, rates for the rail movement of such traffic from the ports are and for the future will be discriminatory against connecting common carriers by water subject to part III, and unjustly discriminatory against shippers whose grain and grain products reach those ports by for-hire barge transportation, to the extent that those rates exceed the contemporary rates or the lowest division received by the respective rail lines, over which the ex-barge traffic moves, out of joint-rail rates applicable on grain and grain products from the same origin territory through those ports to the same destination. * * *

" * * * In instances where the divisions accruing to the rail lines from the ports to the same destination differ depending upon inbound rail routing, discrimination will exist to the extent that the ex-barge rate is higher than the lowest division over the route of movement."

A similar finding numbered 2 was made regarding traffic hauled by for-hire barge to the Tennessee River ports of Decatur, Florence-Sheffield, Knoxville and Chattanooga and Guntersville, Alabama.

The plaintiffs in this action are railroads affected by the quoted finding. The Southern railroads affected by finding number 2 have not joined in this action. The primary question before this Court is whether the finding of the Commission that the railroad rates in issue applicable upon shipments of grain and grain products previously transported by for-hire barges, were discriminatory, in violation of section 2 and 3(4) of the Interstate Commerce Act, (49 U.S.C. §§ 2 and 3(4) is premised upon a rational basis and supported by the record and sufficient findings by the Commission.

In addition to its general claim of error that the findings and conclusions of the Commission are contrary to law and unsupported by the record, the plaintiffs specifically attack the findings for the following reasons:

1) The Commission finds unjust discrimination against shippers by barge under Section 2 although divisions of the joint-rail rates are not rates paid by shippers but are private agreements for compensation between the participating carriers.

2) The Commission ignores the precedents as to what constitutes "a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions."

3) The Commission's finding of violation of Section 2 is based upon cases which did not involve exempt traffic.

4) The Commission's findings, insofar as they apply to grain transported inbound by exempt carriers, deny to the regulated carriers guarantees of due process and are not within the National Transportation Policy.

5) In their complaint, plaintiffs point out as error by the Commission that the findings are unjustified to the extent they find discrimination on hauls from Greenville or Natchez, Mississippi, or Baton Rouge, Louisiana. There are no authorized joint routes with interchange

between carriers at these points and thus, no divisions. The alleged error is not pursued in the briefs and is apparently abandoned.

6) In finding that the lowest divisions are the measurement of discrimination, the Commission sets an illegal standard. The standard set by the Arrow case is "actual compensation", and the evidence established that the lowest divisions are not discriminatory, that the service costs related to divisions are less than service costs on ex-barge hauls, and that the lowest divisions would not be compensatory.

7) The establishment of flat rates to apply from ports on all grain would discriminate against the inbound railroads which provided transit service and tender loaded cars to the outbound rail carrier.

■ Contentions one and two ignore the decision in the Arrow case. It was the Court not the Commission, which determined that, whether the rates took the form of ex-barge or ex-rail proportionals or as joint rates, the charges paid by the shipper must preserve intact the savings of the water transportation. The Court held that a charge (here a joint-rail charge) which results in higher rates to the shipper who uses barge traffic to the port for the movement beyond the port than the portion of joint-rail charge received by the carrier for the ex-rail movement beyond the port is in violation of Section 2. It is the outbound movement which brings the comparable ex-barge and ex-rail traffic within the "like and contemporaneous service" test of Section 2. Plaintiff, in effect, assails the conclusions of the Court in the Arrow case which are not under review in this case.

The Court cannot agree with the plaintiffs' reading of the cases relied upon by the Commission in making its order applicable to exempt as well as regulated transportation. I. C. C. v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102, involved both regulated and exempt barge traffic. No distinction was made by the Court or the Commission in that case. Subsequently, in James McWilliams Blue Line, Inc. v. United States, 100 F.Supp. 66, aff'd 342 U.S. 951, 72 S.Ct. 626, 96 L.Ed. 707, the Court specifically rejected the Commission's refusal to entertain the complaint on the ground that the barge traffic was unregulated traffic. In so holding, the Court in the Blue Line case, relied in part upon the Mechling case recognizing that it did not distinguish between regulated and unregulated barge traffic. The Arrow opinion makes no reference to a distinction between unregulated barge traffic and regulated barge traffic but merely directs that the Commission enter an order "prescribing lawful, reasonable, and non-discriminatory rates on ex-barge traffic." Therefore, upon intervention of the Waterways Bulk Transportation Council representing exempt barge interests, the Commission was justified in framing its finding and order broadly to apply to exempt for-hire transportation.

■ In this regard plaintiffs contend that the application of the Commission's findings to transported grain not subject to rate regulation denies them the guarantees of due process and the preservation of their inherent advantages under the National Transportation policy. It is certainly apparent that governmental restrictions on rate changes of regulated traffic inhibit the regulated carriers from meeting competition at a compensatory level at the same time it attempts to serve its purpose of preventing "cutthroat competition". In view of the precedents, however, the Commission and this Court are bound to the proposition that a distinction cannot be made between the application of the Commission's orders to regulated and unregulated barge traffic. The suggestion of the railroads that the Commission's restrictions jeopardize their existence is speculative inasmuch as they are free to set the division or rates charged on ex-barge and ex-rail reshipments at a compensatory level.

The plaintiffs next contend that the finding by the Commission that the lowest division measures the discrimination is not in conformity with the compensation test set forth in the Arrow opinion.

Reference is made by plaintiffs to the portion of the opinion at page 419 of 176 F.Supp. previously quoted herein.

By virtue of the prior decisions, particularly Arrow and Mechling, the Commission was compelled to find discrimination existed to the extent that the division applicable to an ex-rail movement was lower than that assessed on a like ex-barge movement, unless the rail carriers established a cost differential to the outbound carrier which justified a higher ex-barge rate. The Commission found that no cost differential was established, and therefore discrimination existed. The Commission recognized the problem of ascertaining the measurement of the discrimination where the divisions were of such a variable nature because of the many factors involved in determining the division levels. However, the Commission could not be concerned with the reasonableness of the railroad rate structure where the Courts have prescribed that the outbound carriers compensation on ex-barge transhipments could not exceed the compensation accepted on like movements of ex-rail shipments, barring circumstances found not to exist in this case. The effect of the Commission's determination that the lowest division accepted measured the discrimination did not require rates set at the level of the divisions existing before the determination of discrimination, but at any level which the railroads would find acceptable as long as the same measure applied to ex-barge traffic from the same port to the same destination. The "compensation" referred to in Arrow is a comparison of compensation accepted, not reasonable compensation or that which is compensatory. The essence of the Arrow opinion and the Mechling and following cases was to require equality of treatment for the ex-barge traffic. The "compensation accepted" by the outbound carrier as the test prescribed by Arrow must be read in that light rather than in the light of the railroad rate structure.

In the same connection, the railroads complain that the imposition of flat rates from the ports in an effort to comply with the Commission's order discriminate against the inbound railroads. Presumably this is because under the division system the inbound railroad absorbs the cost of providing the car ready for transhipment to the outbound carrier whereas origination service must be absorbed by the outbound carrier for ex-barge reshipments. The argument ignores the fact that the Commission found that the costs of movement to the interchange point, the additional costs which the railroads sought to establish as justifying a higher compensation for the outbound movement of ex-barge grain, had not been substantiated, as related to the division of the outbound carrier. Furthermore, it is the Court's understanding that when flat rates had been imposed in an attempt to comply with the Commissions' order, the transit privileges . had been cancelled and the costs for the same were treated as a separate factor.

█ In any event, the inequity, if any, results as much from the maintenance of the previous railroad rate structure as from the Commission's order. The Commission is not required to frame its findings in such a way as to preserve the rail rate system intact. Arrow, supra, 176 F.Supp. p. 420; Mechling, supra, 330 U.S. at 580, 67 S.Ct. 894.

The heart of the railroads attack on the Commission's order is that the evidence was substantial in support of cost differences in the service performed by the outbound carriers on ex-barge and ex-rail grain and not inconclusive as the Commission found. There is no dispute that the divisions presented in the record revealed consistently lower compensation to the outbound carrier than the rates imposed on the ex-barge reshipments.

The Court has carefully examined the record before the Commission and the findings. The evidence submitted by the railroads tended to show that the costs of handling short haul reshipments were greater per 100 short-line miles than long-haul rail traffic, whether transited at the ports in question or not. It re-

lated the service costs to the joint-rate as a whole. It did not reveal additional costs for ex-barge handling for the corresponding handling of ex-rail shipments covered by the outbound carrier's division. The reshipping division applied from the interchange points. The reshipping rate sought by the water carriers was for the same service. Plaintiffs' witnesses could not specify any circumstance which would entitle the outbound carrier to greater compensation for reshipment of ex-barge than received for ex-rail grain. Only where the witnesses assumed a service performed by the inbound rail carrier for all rail shipments would be performed by the outbound carrier in the event of ex-barge reshipment, could a cost differential to the outbound carrier be anticipated. Such service or the costs thereof were never established.

■■ A reading of the record before the Commission leads to the conclusion that the findings are supported by the record. The Court does not find error in the Commission's findings that a cost differential for transited ex-rail and ex-barge grain for reshipment from the ports was unsubstantiated. There is a rational basis for the Commission's conclusion. Sloan's Moving & Storage Co. v. United States, D.C., 208 F.Supp. 567, aff'd 374 U.S. 95, 83 S.Ct. 1687, 10 L.Ed. 2d 1026; Koppers Company v. United States, D.C., 166 F.Supp. 96. The Commission's findings and order is presumptively valid and the Court concludes that the findings and conclusions are not arbitrary, but are adequate and supported by the record and are in accordance with the law. This Court's judicial function, therefore, ceases as to the Commission's orders of July 6, 1962, and January 30, 1963.

The intervening defendants filed a motion to dismiss the complaint in part. The basis of the motion is that Finding number 2 of the Commission's order is not attacked. Therefore, insofar as the petition is worded to seek the annulment, enjoinder and suspension as to ultimate finding number 2, it should be dismissed. In view of the Court's conclusions as set forth above the questions raised by the motion to dismiss are moot.

The petition in this case was filed on April 22, 1963. The orders under attack in the petition are those of July 6, 1962 and January 30, 1963, requiring the railroads to cease and desist from charging the rates found to cause unlawful discrimination. Tariffs first filed were rejected by the Commission April 24, 1963. By those tariffs the transit privileges at barge unloading ports were cancelled and flat rates made to apply on all grain reshipped from the ports regardless of the prior means of transportation. On through rail traffic to points beyond, the joint rail rates were to be continued. A letter of the Director of Traffic of the I.C.C. explained by letter dated April 25, 1963, the Commission's rejection of the proposed tariffs stating that "the Commission's findings and order require the establishment of ex-barge rates related to the lowest divisions which the rail carriers receive out of the all-rail rates applicable via the ports, *whether transited or not * * ***." The plaintiffs point out in their brief that such an interpretation is not supported by the Commission's findings.

The Court questions whether the plaintiffs complaint regarding the Commission rejection of tariffs dated April 24, 1963, is properly before us. The petition was never amended or evidence offered to present the issue. Some of the parties, nevertheless, discuss it in their briefs. It is offered in the brief of the rail carriers as providing a basis of analysis and understanding of the issues. Therefore, any conclusions of this Court based thereon would be purely advisory.

In view of the foregoing conclusions judgment will be entered dismissing the complaint and the costs of this action will be charged to the plaintiffs.